GRAPHIC SCANNING CORP., Appellant, v CITIBANK, N. A., Respondent.

First Department, March 11, 1986

### APPEARANCES OF COUNSEL

*Peter A. Jaffe* of counsel *(Jaffe & Asher,* attorneys), for appellant.

*Stuart D. Sender* of counsel *(Danforth Newcomb* with him on the brief; *Shearman & Sterling,* attorneys), for respondent.

### OPINION OF THE COURT

SULLIVAN, J.

Pursuant to written agreement plaintiff agreed, *inter alia,* to furnish Citibank with a computerized message processing and delivery system for a period of five years commencing September 1, 1976. Citibank was to pay plaintiff under a fixed formula and, in addition, reimburse it for the system development costs by payment of an incremental message transaction charge. Plaintiff's wholly owned subsidiary, Graphnet, was to provide the domestic message delivery service.

The agreement further provided that after three years Citibank had a right to terminate Graphnet's services if such services were noncompetitive with the same services available to Citibank from an alternate source. If, however, upon receipt of the specified notice under the agreement, Graphnet matched the alternate source's offer, Citibank agreed to enter into a new agreement, the term of which would be extended to the end of the original five-year period. In July of 1978, less than two years into the five-year term, Citibank unilaterally terminated the agreement, replacing plaintiff's system with one Citibank had developed with an independent contractor.

Plaintiff thereafter commenced this action for breach of the agreement, and was awarded summary judgment on liability on the first seven causes of action, which sought recovery of the sums due for services rendered and the developmental costs of the system. These causes of action were remanded for an assessment of damages and the remaining causes severed. This court affirmed the grant of partial summary judgment. (69 AD2d 799.) The ninth and tenth causes of action were subsequently withdrawn pursuant to stipulation, leaving unre-

solved only the eighth cause of action, in which plaintiff seeks its lost profits for the balance of the term of the agreement.*

Plaintiff thereafter moved for partial summary judgment on the issue of liability on the eighth cause of action. Citibank opposed the motion and, citing paragraph 8 of the agreement, which, it contends, unequivocally bars a claim for lost profits, cross-moved for summary judgment dismissing said cause of action. Special Term agreed with Citibank's interpretation of paragraph 8, granted its cross motion and dismissed the eighth cause of action. Since we conclude that paragraph 8 neither insulates a party from liability for breach of contract nor bars a claim in damages for lost profits for such breach, we reverse, award summary judgment to plaintiff on the issue of liability and remand for an assessment of damages.

Citibank claims that it is not liable for plaintiff's lost profits because paragraph 8's provision relieving the parties of liability "for any interruption of service" constitutes a general limitation of liability. Paragraph 8 provides: "Neither party shall be liable to the other for any loss or damage sustained by reason of any failure in or breakdown of the communications and data processing facilities associated with providing the services covered by this Agreement, or for any interruption of service, whatsoever shall be the cause of such failure, breakdown or interruption and however long it shall last."

Citibank, however, has taken the "interruption of service" clause out of context. "To accept [its] argument would be to extol the graphic form of the words and to ignore their signification." (Matter of Licitra v Coughlin, 61 NY2d 450, 453.) Read in its entirety, it is clear that paragraph 8 applies to the activity of transmitting messages, and not to an interruption of service resulting from a decision to terminate the agreement. Paragraph 8 was obviously intended to safeguard plaintiff, as a provider of electronic message delivery services, against the virtually unlimited and unforeseeable liability with which it would otherwise be confronted if messages could not be transmitted due to a failure or breakdown of the communications and data processing facilities and for any associated interruption of service.

In support of its argument that paragraph 8 should not be construed merely as a limitation of liability for a breakdown

---

* In addition to lost profits the eighth cause of action seeks to recover the "continued costs and expenses which plaintiff will sustain during the balance of the term of the agreements."

in the computer system, Citibank cites the opening words of the paragraph, "Neither party shall be liable for any loss or damage". Thus, it argues, since paragraph 8 applies to both parties it cannot be interpreted strictly as a limitation of liability for an interruption of service due to computer breakdown. As plaintiff properly notes, however, both parties had computers in operation and paragraph 8 served to insulate each of them from liability to the other for the malfunctioning of their respective equipment.

Moreover, Citibank's interpretation of paragraph 8 would render superfluous the provision of the agreement allowing Citibank a limited right of termination after three years. Under its interpretation it could, with impunity, cause an interruption of service by a termination of the agreement at any time. It is a generally accepted rule of construction that an agreement must be construed to accord a meaning and purpose to each of its parts. *(Corhill Corp. v S.D. Plants, Inc.,* 9 NY2d 595; *Dady v O'Rourke,* 172 NY 447, 452.) An interpretation which renders a clause absolutely meaningless should be avoided. *(Spaulding v Benenati,* 57 NY2d 418, 425; *Laba v Carey,* 29 NY2d 302, 308; *Muzak Corp. v Hotel Taft Corp.,* 1 NY2d 42, 46.)

The Court of Appeals has had occasion to consider exculpatory clauses similar to paragraph 8. In *Weld v Postal Telegraph-Cable Co.* (199 NY 88), the defendant had incorrectly transmitted a telegraphed message regarding a proposed sale of cotton and, in resisting liability for the loss resulting therefrom, relied upon a clause of limitation. In upholding the validity of such clauses insofar as they limit the service provider's liability for ordinary negligence but excluding from their ambit willful misconduct or gross negligence, the court noted: "The liability which a telegraph company assumes under this general rule may, however, be limited by special contract, and that is to-day the universal practice. As it is a business requiring employees of particular skill, so it is also subject to atmospheric and physical disturbances which may set at naught the greatest care and skill. It is, therefore, but right that telegraph companies should have the power to limit their liability in cases where mistakes occur through no fault on their part, or for such mistakes of their employees as will occur through ordinary negligence in spite of the most stringent regulations or the most vigilant general oversight. But manifestly this power cannot be extended further without placing the public absolutely at the mercy of those engaged in

transmitting telegraphic messages. This is the reason of the rule, long since established in this state, that individuals and corporations engaged in this *quasi* public business, cannot contract to absolve themselves from liability for their own willful misconduct or gross negligence. They may protect themselves by contractual limitations that are reasonable, but beyond that they may not go" *(supra,* at p 98).

In light of the public policy against the enforcement of exculpatory clauses absolving a party of all liability, no matter how egregious its conduct, the courts have implied an exclusion for willful conduct or gross negligence where the limitation fails specifically to provide for such an exception. "[A]n exculpatory agreement, no matter how flat and unqualified its terms, will not exonerate a party from liability under all circumstances. Under announced public policy, it will not apply to exemption of willful or grossly negligent acts". *(Kalisch-Jarcho, Inc. v City of New York,* 58 NY2d 377, 384-385.) In *Gross v Sweet* (49 NY2d 102, 106), cited approvingly in *Kalisch-Jarcho,* the court noted: "To the extent that agreements purport to grant exemption for liability for willful or grossly negligent acts they have been viewed as wholly void". Thus, even under the construction urged by Citibank, the limitation of liability provided in paragraph 8 is unenforceable as against a claim for lost profits based on willful conduct, namely, Citibank's repudiation of the agreement in order to substitute its own system for plaintiff's at a time when it did not have the right to cancel.

Inasmuch as the paragraph 8 limitation exonerating both parties from damage due to "failure in or breakdown of the * * * facilities * * * or for any interruption of service" was designed to address, not a willful breach of contract, but rather an interruption of service due to equipment malfunction and any liability with respect thereto, it does not bar a damage award for lost profits for Citibank's breach of the agreement. Since no issue exists as to Citibank's liability for its termination of the agreement, plaintiff is entitled to an award of partial summary judgment on liability on the eighth cause of action.

Accordingly, the order of the Supreme Court, New York County (David H. Edwards, Jr., J.), entered December 17, 1984, denying plaintiff's motion for partial summary judgment as to liability on the eighth cause of action and granting defendant's cross motion for summary judgment dismissing

said cause of action, should be reversed, on the law, with costs and disbursements, the motion granted and cross motion denied and the matter remanded for an assessment of damages.

KUPFERMAN, J. P., KASSAL and ELLERIN, JJ., concur.

Order, Supreme Court, New York County, entered on or about December 17, 1984, unanimously reversed, on the law, the motion granted and cross motion denied and the matter remanded for an assessment of damages. Appellant shall recover of respondent $75 costs and disbursements of this appeal.