**RICHARDS & O'NEIL, LLP, Floyd I. Wittlin, and Robert Leonard, Appellants–Defendants,**

v.

**Edward M. CONK, Appellee–Plaintiff.**

No. 49A02–0105–CV–293.

Court of Appeals of Indiana.

Aug. 29, 2002.

Brian W. Welch, Phillip J. Fowler, Bingham McHale LLP, Indianapolis, IN, Attorneys for Appellants.

B. Keith Shake, Kerry L. Wagner, Henderson Daily Withrow & DeVoe, Indianapolis, IN, Attorneys for Appellee.

## OPINION

MATTINGLY–MAY, Judge.

Richards & O'Neil, LLP ("Richards & O'Neil"), Floyd I. Wittlin and Robert Leonard appeal the trial court's denial of their motions to dismiss.[1] In separate appeals, Leonard, Richards & O'Neil and Wittlin raise the following issues, which we consolidate as:

1. Whether Indiana courts have personal jurisdiction over Richards & O'Neil and Wittlin; and

2. Whether the trial court erred in denying Leonard's motion to dismiss.

We reverse and remand in part and affirm in part.

## FACTS AND PROCEDURAL HISTORY

Edward M. Conk was one of thirteen shareholders of Day Dream, Inc. ("Day Dream"), a privately-owned company with its principal place of business in Indianapolis. Leonard was employed by Day Dream as Chief Financial Officer. Day Dream was sold to Cullman Ventures, Inc. ("Cullman"), a New York corporation, pursuant to a Stock Purchase Agreement dated March 24, 1997 (the "Stock Purchase Agreement").

Richards & O'Neil, a New York limited liability partnership, acted as counsel to Cullman in its purchase of Day Dream. During the course of this transaction, Richards & O'Neil prepared a legal opinion letter directed to the selling shareholders of Day Dream. Although the firm has on a few occasions represented clients in Indiana, Richards & O'Neil does not have an office in Indiana and does not solicit business within the state. None of the firm's attorneys are licensed to practice in Indiana.

Wittlin is a partner in Richards & O'Neil and a resident of the state of New York. He is believed to have signed the aforementioned opinion letter on behalf of the firm. Wittlin traveled to Indiana once in the 1970s, before he became an attorney, but has never traveled to Indiana for business or pleasure since that time. In connection with Cullman's acquisition of Day Dream, Wittlin and several other Richards

---

1. The appellants petitioned for oral argument. We deny the petition.

& O'Neil attorneys communicated with the selling shareholders' counsel in Indiana by telephone, facsimile and mail. Two Richards & O'Neil associates also traveled to Indiana for two days to review documents associated with the sale.

Richards & O'Neil's opinion letter assured the selling shareholders that it had "investigated such questions of law for the purpose of rendering this opinion [as it] had deemed appropriate" and that the Stock Purchase Agreement "constitutes the valid and binding obligation of the Buyer enforceable against it in accordance with its terms."

As part of the Stock Purchase Agreement, the selling shareholders made a series of representations and warranties concerning Day Dream. The Stock Purchase Agreement specified that the five largest selling shareholders, including Conk, would indemnify Cullman, jointly and severally, for any losses or liability as defined in the Stock Purchase Agreement arising out of any inaccuracy of any representation or warranty made by the selling shareholders. The Stock Purchase Agreement also set a $3,000,000.00 limit on the amount that Cullman could recover for breach of the Stock Purchase Agreement.

The Stock Purchase Agreement contained a release, which states in relevant part:

> each seller ... hereby releases and forever discharges the Company and its Subsidiaries ... and their respective Article XX Affiliates (as defined below), absolutely and forever, of and from any and all direct or indirect liabilities, claims, losses, damages, costs, expenses, deficiencies, obligations, responsibilities, demands, benefits, accounts, liens, rights of action, claims for relief, and causes of action, of every nature and kind whatsoever, in law and in equity, known or unknown, fixed or unfixed, choate or inchoate, liquidated or unliquidated, secured or unsecured, accrued, absolute, contingent or otherwise ... which the Releasor and its Article XX Affiliates had, have, or may have against any Released Party and/or its Article XX Affiliates for, upon or by reason of any matter, cause or thing whatsoever from the beginning of the world to the Closing Date.

(Appellant's App. at 241.) Affiliate is defined elsewhere in the Stock Purchase Agreement to specifically include Day Dream's "officers, directors, trustees, employees, representatives, agents and attorneys." *Id.* Leonard was both an officer and an employee of Day Dream.

In connection with the sale to Cullman, Conk and other shareholders of Day Dream entered into an Agreement Respecting Resolution of Shareholder and Certain Option Holder Interests (the "Resolution Agreement"). This agreement recognized that Day Dream had obligations to Leonard and others pursuant to Day Dream's Employee and Non–Employee Director Stock Option Agreement. Cullman required, as a condition of entering into the Stock Purchase Agreement, that Leonard and all other stock option holders terminate their rights to exercise options in return for cash payments. Accordingly, under the Resolution Agreement, Leonard agreed to terminate his option rights in exchange for a cash payment of $1,599,000.00. While the Resolution Agreement required Leonard to release his rights to exercise options in exchange for the cash payment, it imposed no further obligations or duties upon him.

Following the sale of Day Dream, a dispute arose between Cullman and the selling shareholders of Day Dream, including Conk. In this dispute, Cullman asserted claims totaling more than the purchase price for Day Dream. Cullman brought

an arbitration action in New York against the selling shareholders asserting, among other things, claims for securities fraud and breaches of written representations and warranties regarding Day Dream's financial statements. Conk and other selling shareholders also sued Cullman in Indiana.[2] The New York arbitration was settled as to all selling shareholders except Conk. Cullman has withdrawn all its claims against Conk for fraud and breach of representation and warranties relating to Day Dream's financial statements. As part of these claims, Richards & O'Neil attorneys appeared *pro hac vice* in Indiana courts on behalf of Cullman and Day Dream. Richards & O'Neil attorneys also traveled to Indiana to review documents and interview witnesses.

Conk filed a complaint April 12, 1999, in which he claimed that Leonard, as Chief Financial Officer of Day Dream, represented to Conk prior to the sale of Day Dream that Day Dream's financial statements were accurate. Conk claims that he relied on Leonard's representations when Conk, in turn, represented and warranted to Cullman in the Stock Purchase Agreement that Day Dream's financial statements were true and accurate. Conk also stated claims against Wittlin and Richards & O'Neil for breach of contract, professional negligence, and violation of the Indiana Securities Act.

Conk's lawsuit was removed to federal court on June 18, 1999. Conk filed a motion to remand on July 15, 1999. On August 9, 1999, Leonard, Wittlin, and Richards & O'Neil filed motions to dismiss Conk's complaint. The federal court remanded the lawsuit to state court on December 8, 1999. In its remand order, the federal court declined to rule on the pending motions to dismiss.

2. The Indiana lawsuit has been dismissed.

After remand to the Marion Superior Court, the trial court heard oral arguments on the motions to dismiss on August 4, 2000. On March 1, 2001, the trial court denied the motions to dismiss. The trial court certified its order for appeal on April 9, 2001, and granted a petition for leave to appeal from interlocutory order and accept jurisdiction on May 21, 2001.

**DISCUSSION AND DECISION**

1. *Jurisdiction*

 Richards & O'Neil and Wittlin argue that, because Indiana courts lack personal jurisdiction over them, the trial court erred in denying their motion to dismiss. We employ a *de novo* standard when reviewing questions of whether personal jurisdiction exists. *Sohacki v. Amateur Hockey Assoc. of Illinois*, 739 N.E.2d 185, 188 (Ind.Ct.App.2000). When reviewing matters involving personal jurisdiction, the party challenging jurisdiction has the burden of establishing the lack thereof by a preponderance of the evidence. *Id.* Upon appeal from a motion to dismiss on grounds of lack of jurisdiction, the Court of Appeals is in as good a position as the trial court to determine whether it has jurisdiction. *Zollman v. Gregory*, 744 N.E.2d 497, 498 (Ind.Ct.App.2001).

 General personal jurisdiction refers to the ability to be sued for any claim in a state. *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1234 (Ind.2000). In order to establish general personal jurisdiction, the court must find continuous and systematic contacts with the forum state such that the defendant could reasonably foresee being haled into court in that state for any matter. *Id.* General jurisdiction allows a court to entertain a suit against a defendant "because

of the defendant's general presence in the forum state regardless of whether that presence is related to the litigation at hand." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). Courts are more demanding when jurisdiction is sustained only on a basis of general jurisdiction. *Anthem,* 730 N.E.2d at 1234.

Specific jurisdiction, on the other hand, exists only when a defendant has purposefully established contact with the forum and the basis of the lawsuit arises out of those contacts. *Id.* at 1235 (citing *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)). Analysis of the contacts for specific personal jurisdiction is determined on a case-by-case basis. *Id.* Factors to consider when evaluating the defendant's contacts with the forum state include: 1) whether the claim arises from the defendant's forum contacts; 2) the overall contacts of the defendant or its agent with the forum state; 3) the foreseeability of being haled into court in that state; 4) who initiated the contacts; and 5) whether the defendant expected or encouraged contacts with the state. *Id.* at 1236.

A single contact with a forum state may be enough to establish specific personal jurisdiction; however, the defendant's conduct must create a substantial connection with the forum state and the acts must be purposeful, not a random, fortuitous or attenuated contact or the unilateral conduct of a third party. *Sohacki,* 739 N.E.2d at 189.

In this case, we find that neither Richards & O'Neil nor Wittlin had sufficient contacts with the state of Indiana that exercise of either general or specific jurisdiction over them is appropriate. Conk's claims against Wittlin and Richards & O'Neil arise from the law firm's issuance

of an opinion letter. The opinion letter at issue was prepared in New York by Richards & O'Neil as part of its representation of Cullman, a New York corporation. Conk is a resident of the state of Texas. If he indeed relied upon representations made in the opinion letter, such reliance and any attendant injury or damages would have occurred in Texas, where Conk resided, or in New York, where the letter was issued.

Richards & O'Neil is a New York limited liability partnership. At no time did it maintain an office in Indiana. It does not advertise or solicit business in Indiana. None of its attorneys are licensed to practice in Indiana. Further, Wittlin has never traveled to Indiana on business and did not travel to Indiana in connection with Cullman's acquisition of Day Dream.

Conk argues the following factors weigh in favor of a finding of jurisdiction: 1) attorneys from Richards & O'Neil traveled to Indiana as part of Cullman's acquisition of Day Dream; 2) two of Richards & O'Neil's attorneys spent two days in Indiana reviewing documents in connection with Cullman's acquisition of Day Dream; 3) Wittlin and several other Richards & O'Neil attorneys communicated with Day Dream's selling shareholder's counsel in Indiana by telephone, facsimile, and mail; 4) Richards & O'Neil appeared *pro hac vice* in Indiana courts on two occasions on behalf of Cullman and Day Dream in litigation arising after Cullman's acquisition of Day Dream; and 5) Richards & O'Neil attorneys traveled to Indiana to review documents and interview witnesses in connection with a New York arbitration arising out of Cullman's acquisition of Day Dream.

We find these factors insufficient to subject Richards & O'Neil or Wittlin to jurisdiction in Indiana. Conk's claim does not directly arise out of Richards & O'Neil's or

Wittlin's contacts in Indiana. Richards & O'Neil's and Wittlin's contacts with the state of Indiana were initiated by its client, a New York corporation that was buying an Indiana business. As part of this transaction, Richards & O'Neil made minimal contacts with the state of Indiana to gather information for its client. There are not sufficient contacts with Indiana to justify subjecting Richards & O'Neil and Wittlin to jurisdiction in this state in this instance. The trial court erred in denying their motion to dismiss.[3] We reverse and remand to the trial court with instructions to grant Wittlin and Richards & O'Neil's motions to dismiss.

### 2. Failure to State a Claim

 Leonard argues the trial court erred when it denied his motion to dismiss. He contends that Conk's complaint against him failed to state a claim. When reviewing a motion to dismiss for failure to state a claim brought pursuant to Rule 12(B)(6) of the Indiana Rules of Trial Procedure, we must accept as true the facts alleged in the complaint. *Morgan Asset Holding Corp. v. CoBank, ACB*, 736 N.E.2d 1268, 1271 (Ind.Ct.App.2000). We need not accept as true factual allegations that are contradicted by other allegations or exhibits attached to or incorporated in the pleading, and need not accept as true conclusory, non-factual assertions or legal conclusions. *Id.* In reviewing the pleadings, we must view the pleadings in the light most favorable to the non-moving party and draw reasonable inferences therefrom in favor of that party. *Id.* In this instance, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of a motion to dismiss is

proper only if it is apparent that the facts alleged in a complaint are incapable of supporting relief under any set of circumstances. *Baker v. Town of Middlebury*, 753 N.E.2d 67, 70 (Ind.Ct.App.2001), *reh'g denied, trans. denied.* Dismissals for failing to state a claim are rarely appropriate. *Ratliff v. Cohn*, 693 N.E.2d 530, 534 (Ind. 1998), *reh'g denied; Davidson v. Perron*, 716 N.E.2d 29, 33 (Ind.Ct.App.1999), *trans. denied.*

Conk's complaint against Leonard alleged that Leonard had engaged in actions that constituted breach of contract, professional negligence, constructive fraud, breach of fiduciary duty to shareholders of a close corporation, and violation of the Indiana Securities Act. Leonard argues that the release Conk signed as part of the Stock Purchase Agreement should now act to bar Conk's claims.

 The terms of the release explicitly provide that it is governed under New York law. New York courts have held that public policy prohibits a person from using a general limitation of liability to protect himself from liability for "willful or grossly negligent acts." *Graphic Scanning Corp. v. Citibank, N.A.*, 116 A.D.2d 22, 499 N.Y.S.2d 712, 715 (N.Y.App.Div. 1986). An exculpatory clause is unenforceable when the misconduct for which it would grant immunity smacks of intentional wrongdoing. *Gross v. Sweet*, 49 N.Y.2d 102, 424 N.Y.S.2d 365, 400 N.E.2d 306, 308 (N.Y.1979). Intentional or reckless conduct is at the heart of the policy behind the prohibition against the release of fraud claims. *Teleflex, Inc. v. Collins & Aikman Prods. Co.*, 961 F.Supp. 368, 371 (D.Conn. 1996).

---

**3.** Richards & O'Neil and Wittlin also argue that Conk's complaint against them failed to state a proper claim. Because we find that

Indiana courts do not have jurisdiction over them in this matter, we need not address these arguments.

Conk's claims of breach of contract, professional negligence, constructive fraud, breach of fiduciary duty, and violation of the Indiana Securities Act could all involve willful or grossly negligent acts that would prevent these claims from being released under the terms of the Stock Purchase Agreement. Conk has not yet had the opportunity to present evidence that would show whether Leonard's acts were willful or grossly negligent. Because we must view the pleadings in the light most favorable to the non-moving party, in this case Conk, we cannot say at this time that the facts alleged in Conk's complaint are incapable of supporting relief under any set of circumstances.[4]

We affirm the trial court's denial of Leonard's motion to dismiss.

BAKER, J., concurs.

NAJAM, J., concurring with separate opinion.

NAJAM, Judge, concurring.

I fully concur with the majority but write separately to point out potential issues in cases of this kind arising from the multijurisdictional practice of law.

In August of this year, the American Bar Association's ("ABA") Commission on Multijurisdictional Practice adopted amended guidelines to Rule 5.5 of the Model Rules of Professional Conduct to address multijurisdictional practice. Those new guidelines state, in part, as follows:

[A] lawyer who is admitted in a United States jurisdiction, and not disbarred or suspended from practice in any jurisdiction, may practice law on a temporary basis in another jurisdiction. These would include:

I. Work on a temporary basis in association with a lawyer admitted to practice law in the jurisdiction, who actively participates in the representation;

II. Services ancillary to pending or prospective litigation or administrative agency proceedings in a state where the lawyer is admitted or expects to be admitted *pro hac vice* or is otherwise authorized to appear.

III. Representation of clients in, or ancillary to, an alternative dispute resolution ("ADR") setting, such as arbitration or mediation; and

IV. Non-litigation work that arises out of or is reasonably related to the lawyer's practice in a jurisdiction in which the lawyer is admitted to practice.[5]

REPORT OF THE ABA'S COMMISSION ON MULTIJURISDICTIONAL PRACTICE (adopted August 12, 2002).

The California Supreme Court recently held that a New York law firm, which

---

4. Leonard also argues that Conk's complaint fails to plead a prima facie case for constructive fraud. However, we note that a complaint need not state all elements of a cause of action in order to survive a motion to dismiss for failure to state a claim. *Vakos v. Travelers Ins.*, 691 N.E.2d 499, 501 (Ind.Ct.App.1998), *trans. denied.*

5. The Indiana Rules of Professional Conduct, Rule 5.5 states:

A lawyer shall not:

(a) practice law in a jurisdiction where doing so violates the regulation of the legal profession in that jurisdiction; or

(b) assist a person who is not a member of the bar in the performance of activity that constitutes the unauthorized practice of law.

The Indiana State Bar Association's Committee on Multijurisdictional Practice is in the process of evaluating the ABA's adopted guidelines on multijurisdictional practice. To date, the Committee has not issued a formal proposal or recommendation regarding a possible amendment to Rule 5.5.

represented a New York company and its California affiliate, violated California's statute prohibiting the unauthorized practice of law when it represented the California affiliate in a contract dispute that was scheduled for arbitration but ultimately settled before the hearing date. *See Birbrower v. Superior Court,* 17 Cal.4th 119, 70 Cal.Rptr.2d 304, 949 P.2d 1, 5–10 (1998). That court defined the practice of law in California as that which "entails sufficient contact with [a] California client to render the nature of the legal service a clear legal representation." *Birbrower,* 70 Cal. Rptr.2d 304, 949 P.2d at 5.

At first blush, Richards & O'Neil's and Wittlin's actions seem to raise the specter of the unauthorized practice of law in Indiana. After all, attorneys from the firm assisted Cullman in the purchase of Day Dream, an Indiana corporation. And in doing so, attorneys spent two days in Indiana reviewing documents and communicated regularly throughout the process with Day Dream's shareholders. In addition, Richards & O'Neil attorneys drafted an "opinion letter" for Day Dream shareholders regarding various aspects of the proposed purchase. And after disputes arose surrounding the subsequent purchase, Richards & O'Neil appeared *pro hac vice* in Indiana courts to defend a lawsuit by Day Dream and, on another occasion, came to Indiana to interview witnesses and reviewed documents in connection with a pending New York arbitration.

These contacts with Indiana do not amount to the unauthorized practice of law. First, Richards & O'Neil represented Cullman, a New York corporation, not Day Dream. Secondly, the "opinion letter," which was sent to Day Dream's New York based attorneys and not Conk, contained a clear disclaimer, which stated in part that Richards & O'Neil:

... do not purport to be experts in, or to express any opinion herein concerning the laws, statutes, rules or regulations of any jurisdiction other than the State of New York of the United States of America. We do not opine on, and we assume no responsibility as to, the applicability to, or the effect on, any of the matters covered herein of, the laws of any other jurisdiction.

Appellants' App. at 43. Further, the firm's attorneys obtained *pro hac vice* status for their court appearances. And the amendments to the model rules allow attorneys to perform non-litigation work that arises out of the representation of a client in another jurisdiction and to perform work in another jurisdiction that is ancillary to a pending ADR proceeding. Thus, while attorneys for Richards & O'Neil performed several actions in Indiana, none of them individually or taken together amount to sufficient contact with an Indiana client to constitute the unauthorized practice of law.

But these facts illustrate the dual hazards when an attorney appears to practice law in a foreign jurisdiction, namely, both the risk of engaging in the unauthorized practice of law and the concurrent risk of generating sufficient minimum contacts with a foreign state to submit the attorney or law firm to personal jurisdiction within that state. In the information age, geographic boundaries are dissipating and the nature of legal practice is changing. Attorneys, who are licensed to practice on a state-by-state basis, now draft and circulate documents as e-mail attachments across traditional jurisdictions. In such cases, an attorney's potential liability for unauthorized practice or other claims will depend upon a determination of where and to whom the legal services were rendered. In our new world of e-commerce, acts by nonresidents "having an effect in this state" are subject to evolving notions of

minimum contacts, due process, and long-arm jurisdiction.[6]

---

6. Indiana long-arm jurisdiction has been expanded to the full extent of the law. Effective January 1, 2003, Indiana Trial Rule 4.4(A) is amended following the acts enumerated in subparagraphs (1) through (8) to include: "In addition, a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."