**Barbara Ann SALER, Individually and as Personal Representative of the Estate of Ruth R. Saler, and Nancy Blue Stone, Appellants–Plaintiffs,**

v.

**Gene A. IRICK, David P. Irick, and Nicholas A. Jones, Appellees–Defendants.**

No. 49A02–0304–CV–280.

Court of Appeals of Indiana.

Dec. 30, 2003.

---

Curtis E. Shirley, Indianapolis, IN, Attorney for Appellants.

J. Lamont Harris, Henthorn, Harris & Weliever, Crawfordsville, IN, Attorney for Appellees.

## OPINION

SULLIVAN, Judge.

Barbara Ann Saler Brennan, individually and as the personal representative of the Estate of Ruth Saler, and Nancy Blue Stone appeal following the dismissal of their claim against Gene Irick, David Irick, and Nicholas Jones (collectively "Appellees"). The issue they present for our review is whether the probate court erred in determining that Indiana courts do not have jurisdiction of the matters in issue.

We reverse in part and affirm in part.

Ruth Saler was married to Bruce Saler. He was her third husband and she was his second wife. On March 12, 1993, they executed a joint and mutual last will and testament. The residuary clause of the will stated that the "rest, residue and remainder of the estate and property" would be distributed to their respective children or their children's descendants in equal shares. Appendix at 16. Bruce had two children, Barbara and Nancy. Ruth had three children: Gene, David, and Jo Ann, who was survived in death by her son Nicholas. During her lifetime, but after Bruce had passed away, Ruth designated her bank accounts to be payable-on-death to either Gene or to Gene, David, and Nicholas.[1] Further, they were named as

---

1. There were three such accounts, a money market savings account and two certificates of deposit.

beneficiaries on several annuity contracts.[2] None of the children lived in Indiana at the time of Ruth's death, nor have they moved here. Gene resides in Illinois, David in Maryland, and Nicholas in Virginia. Barbara lives in Colorado and Nancy in Washington.

Following Ruth's death, Gene went to her home at the Marquette Manor retirement home in Indianapolis and removed her personal belongings. Additionally, he met with Joyce Gross, a representative of First Indiana Bank, in regard to his mother's bank accounts. He provided Ms. Gross with a copy of his mother's death certificate and Ms. Gross gave him copies of Form IH–14, an Application for Consent to Transfer Securities or Personal Property. Gene, David, and Nicholas each completed and signed a single copy of the form, and Gene mailed it to First Indiana Bank. First Indiana Bank subsequently mailed checks to Gene, made out to Gene, David, and Nicholas, for their payable-on-death benefits. Gene also sent claim forms to the different annuity companies. Consequently, Gene, David, and Nicholas collected on the annuity contracts. The total they collected from all of the sources combined is approximately $326,000.

Upon appeal, Barbara and Nancy assert that the probate court erred in determining that Indiana courts do not have jurisdiction over this cause. They present three arguments to support their claim. First, they assert that Indiana Code § 32–4–1.5–7 (Burns Code Ed. Repl.1995) authorizes the personal representative of the estate to initiate a proceeding to impose liability upon the transferee of nonprobate property from the estate. Their second argument is that the probate court had personal jurisdiction over Appellees because of the Appellees' contacts with Indiana. The final argument they present is that Indiana courts have *in rem* jurisdiction over the property which was owned by Ruth at the time of her death.

■ Nancy, as personal representative, asserts that she may initiate this action under the auspices of I.C. § 32–4–1.5–7.[3] Appellees contend that she may not do so because I.C. § 32–4–1.5–7 authorizes a proceeding only if the personal representative has received a written demand for the proceeding from the surviving spouse, a dependent child, or a creditor. Nancy counters by asserting that such a reading of the statute would render part of it meaningless. However, we are bound to agree with Appellees that the statute prevents Nancy, as personal representative, from initiating an action under I.C. § 32–4–1.5–7.

Indiana Code § 32–4–1.5–7 states, "No proceeding to assert this liability shall be commenced unless the personal representative has received a written demand by a surviving spouse, a creditor or one acting for a dependent child of the decedent...." It is clear that Ruth had no surviving spouse or dependent child at her death. More importantly, there is no indication that any creditor of the estate requested that Nancy initiate this action. In fact, by her own argument, Nancy implies that no creditor filed such a written request. Consequently, this action cannot proceed with I.C. § 32–4–1 .5–7 as its authority. *See Shourek v. Stirling*, 607 N.E.2d 402, 405

---

**2.** There were three separate annuities issued by Lincoln Benefit Life and one by Paine Webber.

**3.** Since the time that this suit was initiated, Article 4 of Title 32 has been repealed. The current statutory embodiment of the principle announced in I.C. § 32–4–1.5–7 is now found in Ind.Code 32–17–13 (Burns Code Ed. Repl. 2002).

(Ind.Ct.App.1993) (holding that a written demand by a surviving spouse, surviving child, or creditor must be made to place an action within the province of I.C. § 32–47–1.5–7), *overruled on other grounds* 621 N.E.2d 1107 (Ind.1993). Therefore, we turn to the issue of personal jurisdiction.

■■■ "Personal jurisdiction is 'a court's power to bring a person into its adjudicative process' and render a valid judgment over a person." *Anthem Ins. Cos., Inc. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1231 (Ind.2000) (quoting Black's Law Dictionary 857 (7th ed.1999)). The existence of personal jurisdiction over a defendant is a constitutional requirement in rendering a valid judgment, mandated by the Due Process Clause of the Fourteenth Amendment. *Id.* at 1237. Personal jurisdiction is a question of law. *Id.* As such, either it does exist or it does not exist. *Id.* The question of its existence is not entrusted to a trial court's discretion. *Id.* A de novo standard is employed by appellate courts when reviewing questions of whether personal jurisdiction exists. *Id.*

■■ In determining whether an Indiana court has personal jurisdiction, a court must proceed with a two-step analysis. *Id.* at 1232; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind.Ct.App.2002). First, the court must determine if the defendant's contacts with Indiana fall under the "long-arm statute," Ind. Trial Rule 4.4. *Anthem*, 730 N.E.2d at 1231–32. If the contacts fall under Rule 4.4, the court must then determine whether the defendant's contacts satisfy federal due process analysis. *Id.* at 1232.

Indiana Trial Rule 4.4 enumerates eight acts which will render an individual to have submitted to the jurisdiction of Indiana. Of the eight listed factors, the only one which may be applicable here is (A)(1)—"doing any business in this state." Additionally, as amended on July 19, 2002, and effective January 1, 2003, Rule 4.4 contains a provision which states, "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." This new provision does not apply in this case because this case was initiated prior to the announcement of the new rule. *See Sneed v. Associated Group Ins.*, 663 N.E.2d 789, 795 (Ind.Ct.App.1996) (new rules announced through a rulemaking process will only be applied to cases which arise after the new rule has been announced). Consequently, our sole concern is whether Appellees were "doing any business in this state" when they attempted to collect on the payable-on-death accounts.

Appellees argue that they were not doing any "business" in Indiana because their actions do not meet the definition of business. In their brief, they define business as " 'a continuous or regular activity for the purpose of earning a livelihood.' " Appellees' Brief at 12 (quoting *Asbury v. Indiana Union Mut. Ins. Co.*, 441 N.E.2d 232, 237 (Ind.Ct.App.1982)).[4] Further, they cite to Black's Law Dictionary 198 (6th ed.1990), which defines "business" as " '[e]mployment, occupation, profession, or commercial activity engaged in for gain or livelihood.' " While we agree that "business" may be defined as such, we do not agree that "business" for the purpose of Rule 4.4 is limited to these definitions. Rather, we believe that a more expansive definition of "business" is required when interpreting Rule 4.4. Therefore, we turn to other sources to inform our decision.

---

**4.** In *Asbury,* this definition was used in the context of a "business pursuit" when discussing a homeowner's exemption to an insurance policy.

A common meaning attributed to "business" is that of an "affair" or "matter." *E.g.*, Webster's Third New International Dictionary 302 (1976). A similar definition is that of "a special task, duty, or function." Webster's New World Dictionary 192 (2nd College ed.1982). Reading Rule 4.4 with this view of "business," we conclude that Appellees have maintained contacts such that they fall within the long-arm jurisdiction of Indiana.[5]

■ After finding a basis for long-arm jurisdiction, courts must examine whether asserting jurisdiction violates the Due Process Clause of the Fourteenth Amendment. *Anthem*, 730 N.E.2d at 1233. The United States Supreme Court has explained this to mean that a person must have certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Contacts are sufficient to establish personal jurisdiction only if there is some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Anthem*, 730 N.E.2d at 1233–34; *Brockman*, 779 N.E.2d at 1256. Only the acts of the

defendant, and not the acts of a third party or plaintiff, satisfy this requirement. *Brockman*, 779 N.E.2d at 1256.

■ Thus, courts apply a two-part test to determine whether jurisdiction exists consistent with the Due Process Clause. *Id.* First, courts must look at the contacts between the defendant and the forum state to determine if they are sufficient to establish that the defendant could reasonably anticipate being haled into court there. *Anthem*, 730 N.E.2d at 1234; *Brockman*, 779 N.E.2d at 1256. Contacts are any acts physically performed in the forum state or acts performed outside the forum state which have an effect within the forum state. *Brockman*, 779 N.E.2d at 1256. There are two types of contacts which may be sufficient to establish jurisdiction: (1) the defendant's contacts with the forum state which are unrelated to the basis of the lawsuit, and (2) the defendant's contacts which are related to the subject matter of the lawsuit. *Anthem*, 730 N.E.2d at 1234; *Brockman*, 779 N.E.2d at 1256. Those contacts will confer general and specific personal jurisdiction, respectively. *Brockman*, 779 N.E.2d at 1256. If the contacts are sufficient, then the court must evaluate whether the exercise of personal jurisdiction offends tradi-

---

**5.** We recognize two cases cited by Appellees in which this court determined that the defendants' actions did not support personal jurisdiction on the basis of "doing business." In *Bryan Mfg. Co. v. Harris*, 459 N.E.2d 1199, 1204 (Ind.Ct.App.1984), this court stated the proposition that doing business is related to conducting an "ongoing business" and was to further a "business interest." As is evident from our resolution of this issue in this case, we disagree with the assessment of that panel of this court. Further, the analysis of the "doing business" issue in *Bryan Mfg.* is best described as dicta because the court had already determined that personal jurisdiction existed on a separate ground. In *D'Iorio v. D'Iorio*, 694 N.E.2d 775 (Ind.Ct.App.1998),

this court reviewed a situation which is distinguishable upon its facts from the case at hand. Therefore, the conclusion of the court in that case is not controlling. Finally, we make one other point in regard to these two cases and all other relevant cases decided pre-*Anthem*. As pointed out by Appellees, the analysis used in determining whether personal jurisdiction existed changed significantly in *Anthem*. While our Supreme Court recognized that the result of many of the pre-*Anthem* jurisdiction cases would not change when applying the *Anthem* analysis, the possibility does exist that the result obtained in pre-*Anthem* cases may be different than that reached under an *Anthem* analysis.

tional notions of fair play and substantial justice by weighing a variety of interests. *Anthem,* 730 N.E.2d at 1234; *Brockman,* 779 N.E.2d at 1256.

There is no claim that Indiana courts have general personal jurisdiction over Appellees. Rather, the contention of Barbara and Nancy is that Indiana courts have specific personal jurisdiction over Appellees with regard to their collection of the payable-on-death benefits. Therefore, we analyze the issue of specific personal jurisdiction in this case.

A single contact with a forum state may be enough to establish specific personal jurisdiction if it creates a substantial connection with the forum state and the suit is based upon that connection. *Anthem,* 730 N.E.2d at 1235. However, the act must be purposeful, not random, fortuitous, or attenuated, nor may it be the unilateral activity of another party or a third person. *Id.* The analysis of contacts for specific personal jurisdiction is fact-specific and determined on a case-by-case basis. *Brockman,* 779 N.E.2d at 1257. Factors to consider when evaluating the defendant's contacts with the forum state are: (1) whether the claim arises from the defendant's forum contacts, (2) the overall contacts of the defendant or its agent with the forum state, (3) the foreseeability of being haled into court in that state, (4) who initiated the contacts, and (5) whether the defendant expected or encouraged contacts with the state. *Anthem,* 730 N.E.2d at 1236.

Appellees, in asserting that their minimum contacts with Indiana are insufficient to establish that they could foresee being haled into court here, argue that their contacts with Indiana were random, atten-

uated, and fortuitous. Further, they assert that the bank acted unilaterally in issuing the checks for the payable-on-death benefits. They distinguish between the actions of Gene from those of David and Nicholas; nonetheless, they argue that none of them have sufficient contacts with Indiana to support jurisdiction. Finally, they rely upon the similarities between this case and *First American Bank of Virginia v. Reilly,* 563 N.E.2d 142 (Ind.Ct. App.1990) in asserting that Indiana courts lack jurisdiction.[6]

We begin with a review of *First American Bank.* In that case, this court was faced with the question of whether personal jurisdiction could be established over a bank in Virginia which was trustee of an estate probated in Indiana. This court noted that a state does not acquire contacts with an individual or corporation by being the center of gravity of the controversy or being the most convenient location for litigation. *Id.* at 144. Additionally, this court stated that lack of a defendant's personal affiliation with a forum state is not enhanced by the fact that an individual dies in a state and leaves assets which eventually pass to the defendant. *Id.* at 145. Finally, this court reviewed the contacts between First American Bank and Indiana to determine whether the requirements of the Due Process Clause were met.

The pertinent facts in *First American Bank* established that Robert Anderson executed a will before his death. In the will he named First American Bank as the trustee of a trust through which his residuary estate would pass. After the will was admitted to probate, the bank declined

---

6. In their brief, Appellees assert that *First American Bank* stands for the proposition that receipt of an inheritance does not constitute "doing any business" for the purpose of es-

tablishing long-arm jurisdiction. However, *First American Bank* is more appropriately discussed during consideration of whether the Due Process requirements are met.

appointment as executor of the estate. The bank took no part in the probate of the estate. Further, title to the trust assets did not vest in First American Bank until approximately one month after the final decree of the probate court. The court also duly noted that First American Bank was not registered to do business in Indiana and did not transact any business in Indiana. Upon these facts, this court determined that Indiana's contacts with the bank could not have been said to have proximately resulted from actions of the trustee which created a substantial connection with the State. *Id.* Consequently, First American Bank did not have sufficient contacts necessary for the exercise of personal jurisdiction by Indiana courts. *Id.*

Appellees attempt to cast their situation in the same light as in *First American Bank.* Were that the case, we may be inclined to agree with their assertion that Indiana courts do not have jurisdiction. However, unlike the situation in *First American Bank,* Appellees initiated the contacts with Indiana and did more than just receive inheritance benefits. Rather, Gene came to Indiana to collect his mother's personal belongings. He went to the First Indiana Bank branch at Marquette Manor where his mother had lived and presented a copy of his mother's death certificate. He received a copy of the consent to transfer funds form and provided the copy to David and Nicholas. All three of them completed and signed the form which authorized the bank to release the money from the payable-on-death accounts to Appellees.

Appellees have claimed that they never requested that the money be sent to Gene and that the act of issuing the checks was unilateral on the part of First Indiana Bank. To the extent that Appellees are asserting that they never requested that the money be paid to them, the evidence does not support such an assertion. The consent to transfer form stated that no administration of the estate was pending in any court and that Appellees did not contemplate that there would be any such proceedings. It further stated that the accounts owned by Ruth were payable-on-death to Gene, David, and Nicholas and that the property would be transferred to them. There is nothing on the face of the form which indicates anything other than that the bank was supposed to send the money to them. That the bank sent checks for David and Nicholas to Gene because it had dealt with Gene in the past does not negate the fact that David and Nicholas requested that First Indiana Bank pay them the money they believed they were owed. Further, following their request for payment through the use of the form, the only additional step needed for the money to be transferred was for the Inheritance Tax Division of the Indiana Department of Revenue to consent to the transfer. Under these facts, it cannot be said that Appellees did not request that the money be sent to them.

Appellees also assert that the claim does not arise from their contacts with Indiana but with Ruth's decision to designate them as beneficiaries of her accounts. While Ruth's action may have set in motion the chain of events leading to the claim, Appellees' actions in requesting the transfer of money, which Barbara and Nancy believe should remain in the estate, is the actual cause of the claim.

Appellees' claim that they could not expect to be haled into court in Indiana is a factor which does not weigh heavily in favor of Indiana courts asserting jurisdiction. Clearly, none of the five individuals involved in this lawsuit are residents of Indiana. However, that concern is weighted against Appellees' actions in initiating

and pursuing contacts with an Indiana bank and their apparent desire to quickly resolve the dealings with Ruth's personal effects and accounts. Under these facts, we cannot say that it was unforeseeable that Appellees could be haled into an Indiana court to account for their actions.

Finally, Appellees claim that their actions were random, fortuitous, and attenuated. To support their claim, they cite to *Richards & O'Neil, LLP v. Conk*, 774 N.E.2d 540 (Ind.Ct.App.2002). However, the facts in *Richards & O'Neil* are clearly distinguishable from those at issue here. In that case, attorneys from New York had some dealings with individuals in Indiana in furtherance of their representation of a New York client. Those attorneys even traveled to Indiana to gather information for a proposed purchase of a privately owned company for their New York client. However, this court noted that none of the contacts with Indiana were initiated by the attorneys at Richards & O'Neill and that those contacts were only to gather information, an act which did not directly result in the plaintiff's claim involving the accuracy of a financial statement. *Id.* at 546–47. Consequently, this court held that Indiana courts had no personal jurisdiction over Richards & O'Neill or the attorney named in the suit. *Id.* at 547. The facts before us are much different. Appellees did not make contacts in Indiana just to gather information, nor were those contacts initiated at the urging of someone other than Gene, David, or Nicholas. Instead, they were a consequence of the deliberate acts of Gene, and in some instances, by Appellees as a group. This is sufficient to alleviate any concern about whether the contacts may have been random, fortuitous, or attenuated.

To this point, we have said little about the varying degrees of contacts with Indiana among the Appellees. The parties each have made lengthy arguments concerning whether Gene was the agent of David and Nicholas in his dealings with First Indiana Bank. We do not formally address the issue of agency law in this decision. Suffice it to say that while Nicholas and David were less involved in pursuing contacts in Indiana, they each performed a crucial action—signing the consent to transfer form which requested the bank to transfer the money. To the extent that they do not view that as sufficient, we note that they acted in concert with Gene at all times in his efforts to obtain the payable-on-death benefits. They cannot now benefit by not having to represent themselves in an Indiana court because Gene maintained the most contacts while they waited to receive the benefits.

■■■■■ Once contacts sufficient to establish personal jurisdiction are found, the court must then decide whether asserting personal jurisdiction over the defendant offends traditional notions of fair play and substantial justice. *Brockman*, 779 N.E.2d at 1257. We balance a number of factors to determine whether the assertion of jurisdiction is reasonable and fair. *Id.* The factors are: (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies. *Id.* The defendant carries the burden of establishing that asserting jurisdiction is unfair and unreasonable. *Id.* To determine if the exercise of personal jurisdiction is reasonable in a particular case, we may examine the relationship among the defendant, the forum, and the litigation, the

principles of interstate federalism, and the existence of an alternative forum to hear the dispute. *Id.*

We must admit that a burden will be placed upon Appellees for having to defend against this action in Indiana. Each will have to travel to Indiana from another state. Although, we acknowledge that with the advancements in travel and communication technology, defending oneself in another state than where one resides is not as severe a burden as it once was. Further, we disagree with Appellees' claim that Indiana has no interest in adjudicating this matter. While it is true that none of the parties reside in Indiana, the assets originated in Indiana, and according to the complaint filed by Barbara and Nancy, were transferred to Appellees in violation of Ruth and Bruce's joint will which is being administered through Ruth's estate in Indiana. Consequently, we cannot say that Indiana has no interest in determining whether the payable-on-death accounts were established in violation of the will.

Barbara and Nancy's interest in obtaining effective and convenient relief in Indiana is compelling. Neither Barbara nor Nancy reside in Indiana, but Barbara is the personal representative of Ruth's estate, requiring that she have contact with the court system in Indiana. Further, were we to say that Indiana courts do not have personal jurisdiction, Barbara and Nancy could be forced to litigate this action in three separate states as the Appellees desire, effectively ending all financial viability of the action. Moreover, the specter of three different jurisdictions litigating this action is concerning. Not only would three different courts in three different states hear this action, each would pass judgment which could lead to inconsistent results. Finally, we cannot ignore the necessity of courts in states where an estate is being administered to ensure that property which may appropriately be part of an estate is not removed from the estate and taken across state lines where it cannot be reached.

■■■ Based upon the fact that Appellees were "doing any business" in Indiana when they made an effort to collect the payable-on-death benefits, the extent of their contacts which dealt with the transfer of funds under the watchful eye of the State of Indiana, and that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice, we are bound to conclude that Indiana courts have personal jurisdiction over Appellees. However, personal jurisdiction is limited to matters relating to the payable-on-death benefits from bank accounts which were paid by First Indiana Bank. The entire analysis which we have done to determine that specific personal jurisdiction exists is not applicable for acquiring personal jurisdiction in regard to the annuities issued by Lincoln Benefit Life and Paine Webber. The contacts which were made in Indiana that invoked application of the long-arm statute do not exist in relation to the annuities. There is no evidence that Appellees did any acts within or connected to Indiana which were also related to the annuities.[7] Conse-

---

**7.** In their reply brief, Barbara and Nancy assert that evidence does exist which shows Appellees performed actions within Indiana related to the annuities which are sufficient to obtain specific personal jurisdiction. In their reply brief, they attached a copy of the application for consent to transfer securities which was submitted to Lincoln Benefit Life Co. This evidence was not before the trial court and is admittedly being presented as new evidence upon appeal. As Appellees correctly assert in their motion to strike the reply brief, new evidence may not be submitted to the court for the first time upon appeal. *See Porter v. Bankers Trust Co. of California,* 773 N.E.2d 901, 904 n. 4 (Ind.Ct.App.2002); *Kis-*

quently, the prerequisite for an Indiana court obtaining specific personal jurisdiction under Trial Rule 4.4 does not exist. Therefore, no cause of action may be held in Indiana against Appellees concerning the payments from the annuities because of Appellees' actions directed toward Indiana.

Nonetheless, one final argument for the assertion of jurisdiction by Indiana courts has been made by Barbara and Nancy. In their brief, they claim that Indiana courts maintain *in rem* jurisdiction over a decedent's property. They then cite to various cases for the proposition that Indiana probate courts have *in rem* jurisdiction over estates and trusts. Further, they conclude that a probate court may place a constructive trust over the assets of a decedent even though those assets may no longer be in Indiana.

■■■ Our analysis of this issue is controlled by the decision of the United States Supreme Court in *Hanson v. Denckla,* 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958). In that case, the Supreme Court answered the question of whether a state court could maintain *in rem* jurisdiction over trust assets which were located in another state. Specifically, the Florida Supreme Court had held that the presence of subject property in the state was not essential to its jurisdiction. Rather, as stated by the United States Supreme Court, authority over the probate and con-

struction of Florida's domiciliary's will was thought to be sufficient. However, the United States Supreme Court determined that jurisdiction could not be predicated upon the contingent role of the Florida will. *Id.* at 247–48, 78 S.Ct. 1228. The Court stated:

"Whatever the efficacy of a so-called 'in rem' jurisdiction over assets admittedly passing under a local will, a State acquires no in rem jurisdiction to adjudicate the validity of inter vivos dispositions simply because its decision might augment an estate passing under a will probated in its courts. If such a basis of jurisdiction were sustained, probate courts would enjoy nationwide service of process to adjudicate interests in property with which neither the State nor the decedent could claim any affiliation. The settlor-decedent's Florida domicile is equally unavailing as a basis for jurisdiction over the trust assets. For the purpose of jurisdiction in rem the maxim that personalty has its situs at the domicile of its owner is a fiction of limited utility. The maxim is no less suspect when the domicile is that of a decedent. In analogous cases, this Court has rejected the suggestion that the probate decree of the State where the decedent was domiciled has an in rem effect on personalty outside the forum State that could render it conclusive on the interests of nonresidents over whom there

kowski v. O'Hara, 622 N.E.2d 991, 992 (Ind. Ct.App.1993), *trans. denied.* Further, as Appellees note, the reply brief fails to comply with the requirements of Ind. Appellate Rule 46(C) because it does not contain a table of contents, table of authorities, and summary of the argument. Upon these grounds, Appellees have requested that we strike the entire reply brief of Barbara and Nancy. While we recognize the shortcomings in the reply brief, we strike only the offensive parts, most notably, that relating to the evidence surrounding the claims on the annuities.

As an aside, we note that the claim made by Barbara and Nancy that Appellees have attempted to commit a fraud in Indiana by denying in the application for consent to transfer securities that an estate was opened or would be opened is not supported by the evidence admitted. While it is clear that the application was file stamped at a date after the estate was opened, there is no evidence that at the time Appellees filled out the form that the estate was open or that they were aware that Barbara planned to open an estate.

was no personal jurisdiction. The fact that the owner is or was domiciled within the forum State is not a sufficient affiliation with the property upon which to base jurisdiction in rem." *Id.* at 248–49, 78 S.Ct. 1228 (citations omitted) (footnotes omitted).

In this case, there is no question that the annuities were not present in Indiana. Therefore, per the holding in *Hanson,* Indiana may not maintain *in rem* jurisdiction over the annuities. Further, while it may be true that decedent received income from the annuities while she was in Indiana, that too will not establish jurisdiction in Indiana. Consequently, Indiana courts are without *in rem* jurisdiction over the annuities which were paid to Appellees.[8]

The order of the probate court in dismissing this cause of action for lack of personal jurisdiction is reversed as to the issue of the Indiana bank accounts and affirmed with regard to the annuities. We remand to the probate court for further proceedings.[9]

FRIEDLANDER, J., and RILEY, J., concur.

---

8.  Barbara and Nancy have expressed their concern that if a State may not exercise *in rem* jurisdiction over a decedent's property which has been taken out of the State, unscrupulous characters may take assets and flee the jurisdiction. We do not foresee that to be a major concern under the analysis we have used in this case. Were the assets in Indiana at the time of the decedent's passing and subsequently removed from Indiana, Indiana courts should be able to maintain personal jurisdiction over those individuals just as we have in this case. To the extent that a decedent may remove the assets from Indiana by placing them in a trust or disposing of them in some other way, the United States Supreme Court has clearly stated that our courts have no *in rem* jurisdiction over that property.

9.  This decision does not address the merits of the claim against Appellees, as that issue is not before us.