(August 19, 2008)

■ IDT Corp. et al., Respondents, v Tyco Group, S.A.R.L., et al., Appellants. [863 NYS2d 30]—

Order, Supreme Court, New York County (Charles Edward Ramos, J.), entered October 11, 2007, which, to the extent appealed from as limited by the briefs, granted plaintiffs' motion for partial summary judgment on the issue of liability and denied that portion of defendants' cross motion seeking summary judgment dismissing the complaint, unanimously reversed, on the law, with costs, plaintiffs' motion for partial summary judgment denied, that portion of defendants' cross motion seeking summary judgment dismissing the complaint granted, defendants' counterclaims severed, and the matter remanded to Supreme Court for further proceedings. The Clerk is directed to enter judgment dismissing the complaint.

This action is for breach of a settlement agreement. The agreement was entered into on October 10, 2000, was partially performed by the dismissal of all of the then-pending litigation

between the parties, and requires defendants to provide specified amounts of fiber optic capacity, at specified times, at a specified price, in a specified configuration, and with specified endpoints. It also expressly calls for further written agreements between the parties, including an indefeasible right of use (IRU). These further agreements are required to be consistent with defendants' standard agreements for similarly situated customers and "in any event" consistent with the settlement agreement. The settlement agreement thus leaves room to negotiate the terms of the IRU and the other agreements it contemplated, but makes clear that each side has the right to insist that those terms be as set forth in defendants' standard agreements except to the extent any such term was inconsistent with the settlement agreement. Accordingly, although the settlement agreement "reflect[s] a meeting of the minds on all the issues perceived to require negotiation" (*Brown v Cara*, 420 F3d 148, 153 [2d Cir 2005] [applying New York law; internal quotation marks omitted]), all of its essential terms are not contained within its four corners. The parties agreed that the remaining terms could and should be negotiated but provided an alternative mechanism for determining those terms in the event negotiations were not successful.

Because defendants' standard agreements, including in particular the IRU, were not in existence at the time the settlement agreement was entered into, essential terms of the settlement agreement remained indeterminate, and thus the settlement agreement was not a fully enforceable agreement when the parties entered into it. Once the content of defendants' standard agreements became determinate, however, the contract would have been fully enforceable if either side insisted that the open terms be as set forth in defendants' standard agreements (except to the extent any particular term of a standard agreement was inconsistent with the settlement agreement). In essence, the settlement agreement is indistinguishable from a written agreement in which the parties agree on many but not all of the essential terms of their relationship, and further agree that a third party, through binding arbitration or otherwise, is to resolve the remaining terms if they are not resolved by the further negotiations called for in the agreement. We think it plain that if one of the parties to such an agreement refused to perform after the third party resolved the remaining terms, the party refusing to perform could not avoid liability for breach of contract on the ground that the agreement was not fully enforceable when it was executed.

In *Brown,* the Second Circuit stated that "binding prelimi-

nary agreements fall into one of two categories" (420 F3d at 153 [internal quotation marks omitted]). A "Type I preliminary agreement[ ] [is] complete, reflecting a meeting of the minds on all the issues perceived to require negotiation" (*id.* [internal quotation marks omitted]). "Because it is complete, a Type I preliminary agreement binds both sides to their ultimate contractual objective" (*id.* [internal quotation marks omitted]). By contrast, "Type II preliminary agreements . . . are binding only to a certain degree, reflecting agreement on certain major terms, but leaving other terms open for further negotiation" (*id.* [internal quotation marks and brackets omitted]). "Type II agreements do not commit the parties to their ultimate contractual objective but rather to the obligation to negotiate the open issues in good faith in an attempt to reach the . . . objective within the agreed framework" (*id.* [internal quotation marks and brackets omitted]).

The settlement agreement reflects a third, hybrid category of preliminary agreement, one that is incomplete but nonetheless "binds both sides to their ultimate contractual objective" upon the subsequent occurrence of a contingency, here, either the insistence of one party on the terms of the standard agreements after they come into existence or a resolution of the remaining terms through further negotiation. Under this hybrid, which might be called a "contingent Type I agreement," both parties were required to "negotiate the open issues in good faith" unless and until one party were to insist on the terms of the standard agreements. Thus, we reject both plaintiffs' contention that the settlement agreement is a "Type I" agreement and defendants' contention that it is a "Type II" agreement.

Plaintiffs erroneously contend that defendants breached the settlement agreement when, on June 12, 2001, defendants proposed an IRU that contained terms—such as a provision that would have required plaintiffs to relinquish their right to use the fiber optic network without charge for 15 years, and another provision that would have required plaintiffs to forgo their damages remedies in the event defendants breached the settlement agreement—that plaintiffs contend were inconsistent with the settlement agreement. Nothing in the settlement agreement prohibited defendants or plaintiffs from merely proposing terms that were inconsistent with the settlement agreement. The proposal that defendants made, moreover, was hardly "the sort of definite and final communication" of "an intent to forgo [their] obligations" that is "necessary to justify a claim of anticipatory breach" (*Canali U.S.A. v Solow Bldg. Co.*, 292 AD2d 170, 171 [2002] [internal quotation marks omitted]).

After receiving the June 12 proposal, plaintiffs did not insist that defendants perform in accordance with the terms of defendants' standard agreements. Nor did plaintiffs take the position that defendants thereby had breached the settlement agreement. Rather, the parties did what the settlement agreement required: they negotiated the open terms. The negotiations continued, albeit in desultory fashion, until March 2004, shortly before plaintiffs commenced this action. Because the parties' submissions on the motion and cross motion establish that defendants never made a "definite and final communication" of "an intent to forgo [their] obligations" (*id.*) prior to the commencement of this action, defendants did not, as a matter of law, breach the settlement agreement. Thus, plaintiffs' motion for partial summary judgment on liability should have been denied, and that aspect of defendants' cross motion for summary judgment dismissing the complaint should have been granted. Concur—Lippman, P.J., Andrias, Williams and McGuire, JJ.