[918 NE2d 913, 890 NYS2d 401]

IDT CORP. et al., Appellants, v TYCO GROUP, S.A.R.L., et al., Respondents.

Argued September 15, 2009; decided October 22, 2009

**POINTS OF COUNSEL**

*Patterson Belknap Webb & Tyler LLP,* New York City (*Stephen P. Younger, Sarah E. Zgliniec* and *Gregory Scopino* of counsel), *Grayson & Kubli, P.C.,* McLean, Virginia, and *Kubli & Associates, P.C.,* Gaithersburg, Maryland, for appellants. I. The Appellate Division erred in holding that this binding settlement agreement was an unenforceable preliminary agreement. (*Brown v Cara,* 420 F3d 148; *Adjustrite Sys., Inc. v GAB Bus. Servs., Inc.,* 145 F3d 543; *Mellencamp v Riva Music, Ltd.,* 698 F Supp 1154; *Hallock v State of New York,* 64 NY2d 224; *Racanelli Constr. Co., Inc. v Tadco Constr. Corp.,* 50 AD3d 875; *Matter of Kanter,* 209 AD2d 365; *Medinol Ltd. v Guidant Corp.,* 500 F Supp 2d 345; *William E. McClain Realty v Rivers,* 144 AD2d 216; *Hotel Cameron, Inc. v Purcell,* 35 AD3d 153; *Elizabeth St. v 217 Elizabeth St. Corp.,* 276 AD2d 295.) II. The Appellate Division erred in failing to hold that Tyco had breached the settlement agreement. (*Matter of Brusco v Braun,* 84 NY2d 674; *State of New York v Gordon,* 102 AD2d 990, 64 NY2d 712; *Tesoro Petroleum Corp. v Holborn Oil Co.,* 108 AD2d 607; *Non-Linear Trading Co. v Braddis Assoc.,* 243 AD2d 107; *SPI Communications v WTZA-TV Assoc. Ltd. Partnership,* 229 AD2d 644; *CanWest Global Communications Corp. v Mirkaei Tikshoret Ltd.,* 9 Misc 3d 845; *Towers Charter & Mar. Corp. v Cadillac Ins. Co.,* 894 F2d 516; *Lusker v Tannen,* 90 AD2d 118; *Witherell v Lasky,* 286 App Div 533; *Computer Possibilities Unlimited v Mobil Oil Corp.,* 301 AD2d 70.) III. The Appellate Division erred in granting summary judgment to Tyco in the face of numerous genuine disputes of material fact.

*Dewey Pegno & Kramarsky LLP,* New York City (*Thomas E.L. Dewey* of counsel), for respondents. I. The settlement agreement is a Type II binding preliminary agreement. (*Joseph Martin, Jr., Delicatessen v Schumacher,* 52 NY2d 105; *Goodstein Constr. Corp. v City of New York,* 80 NY2d 366; *180 Water St. Assoc. v Lehman Bros. Holdings,* 7 AD3d 316; *SNC, Ltd. v Kamine Eng'g & Mech. Contr. Co.,* 238 AD2d 146; *Teachers Ins. &*

*Annuity Assn. of Am. v Tribune Co.,* 670 F Supp 491; *Fairbrook Leasing, Inc. v Mesaba Aviation, Inc.,* 519 F3d 421; *Adjustrite Sys., Inc. v GAB Bus. Servs., Inc.,* 145 F3d 543; *Richbell Info. Servs. v Jupiter Partners,* 309 AD2d 288; *River Glen Assoc. v Merrill Lynch Credit Corp.,* 295 AD2d 274; *Arcadian Phosphates, Inc. v Arcadian Corp.,* 884 F2d 69.) II. IDT's two liability theories are baseless. (*Brown v Cara,* 420 F3d 148; *Adjustrite Sys., Inc. v GAB Bus. Servs., Inc.,* 145 F3d 543; *Goodstein Constr. Corp. v City of New York,* 80 NY2d 366; *Tradax Energy, Inc. v Cedar Petrochemicals, Inc.,* 317 F Supp 2d 373; *Broad Props. v Wheels Inc.,* 43 AD2d 276; *Louis Dreyfus Energy Corp. v MG Ref. & Mktg., Inc.,* 2 NY3d 495.) III. IDT did not preserve the argument that the "definitive agreements" were not to be based on Tyco's standard agreements, and in any event that argument is meritless. (*Bingham v New York City Tr. Auth.,* 99 NY2d 355; *Wilson v Galicia Contr. & Restoration Corp.,* 10 NY3d 827; *Matter of Salino v Cimino,* 1 NY3d 166; *Parkin v Cornell Univ.,* 78 NY2d 523.) IV. The First Department correctly held that Tyco did not repudiate the settlement agreement. (*O'Connor v Sleasman,* 37 AD3d 954; *Didier v Macfadden Publs.,* 299 NY 49; *Canali U.S.A. v Solow Bldg. Co.,* 292 AD2d 170; *Rachmani Corp. v 9 E. 96th St. Apt. Corp.,* 211 AD2d 262; *Ga Nun v Palmer,* 202 NY 483; *O'Shanter Resources, Inc. v Niagara Mohawk Power Corp.,* 915 F Supp 560; *Created Gemstones v Union Carbide Corp.,* 47 NY2d 250; *American List Corp. v U.S. News & World Report,* 75 NY2d 38; *City of New York v New York Yankees,* 117 Misc 2d 332; *Tradax Energy, Inc. v Cedar Petrochemicals, Inc.,* 317 F Supp 2d 373.) V. The First Department correctly held that Tyco is entitled to summary judgment. (*805 Third Ave. Co. v M.W. Realty Assoc.,* 58 NY2d 447; *Horphag Research Ltd. v Henkel Corp.,* 115 F Supp 2d 455; *Fairbrook Leasing, Inc. v Mesaba Aviation, Inc.,* 519 F3d 421.)

**OPINION OF THE COURT**

JONES, J.

At issue in this breach of contract action is whether the settlement agreement made the negotiation and execution of further agreements a precondition to the parties' obligation. We hold that it did and affirm the order of the Appellate Division.

By written settlement agreement entered into October 10, 2000, IDT and Tyco agreed to drop their pending lawsuits. The pending lawsuits arose from a dispute between IDT and Tyco over a memorandum of understanding. IDT claimed that Tyco owed it $30,000,000 after withdrawing from a joint venture to

construct a fiber optic communications network. Tyco also had a claim against IDT. All pending claims between the parties were discharged pursuant to the settlement agreement. The settlement agreement, among other things, also called for Tyco to provide IDT with an "indefeasible right of use" (IRU)[1] of certain fiber optic capacity free of charge for a 15-year period. The capacity was to be on Tyco's TyCom Global Network (TGN), a subsea cable system planned to connect North America, Asia and Europe. At the time of the settlement, the TGN was not yet constructed. The agreement states that "[t]he IRU shall be documented pursuant to definitive agreements to be mutually agreed upon and, in any event, containing terms and conditions consistent with those described herein." These further definitive agreements, and the IRU, were to be in writing and consistent with Tyco's standard agreements with similarly situated customers. Tyco's standard agreements were not in existence at the time the settlement was made.

On June 12, 2001, Tyco submitted the proposed IRU document to IDT. The submitted IRU had provisions that IDT claims were inconsistent with the settlement agreement, including one for decommissioning the network after five years, without IDT's permission. In addition, IDT claimed there were other terms and conditions in the IRU which were inconsistent with the settlement agreement. The parties negotiated over the draft, however, and IDT eventually acquiesced in a decommissioning provision. Negotiations continued to be active, but flagged after a sharp drop in the market greatly reduced the value of the capacity Tyco had agreed to supply. The negotiations finally came to an end in March 2004.

On May 5, 2004 IDT brought suit against Tyco, alleging breach of the settlement agreement. After Tyco filed its answer and counterclaims, IDT moved for summary judgment on the issue of liability and on Tyco's counterclaims. Tyco cross-moved for summary judgment on IDT's breach of contract claim. Supreme Court granted IDT's motion, finding Tyco liable, and dismissed Tyco's counterclaims and cross motion. The Appellate Division reversed Supreme Court's order by denying IDT's summary judgment motion and granting Tyco's cross motion to dismiss the complaint (54 AD3d 273 [2008]). The Court held that (1) the settlement agreement was not a fully enforceable

---

1. An IRU is a legal interest that confers a right of access to some or all of the capacity in a telecommunications cable system of another party.

contract when entered into, (2) the agreement was contingent on the negotiation of additional terms and (3) Tyco's proposal of purportedly inconsistent terms did not constitute a breach of contract. The Appellate Division granted IDT leave to appeal and certified the following question to this Court: "Was the order of this Court, which reversed the order of the Supreme Court, properly made?" We now affirm the order of the Appellate Division and answer the certified question in the affirmative.[2]

IDT asserts that the settlement agreement was a fully enforceable contract which bound the parties. It further claims that the settlement agreement was breached on June 12, 2001 when Tyco submitted the IRU containing terms inconsistent with the terms of the settlement agreement. First, IDT says the IRU had a "decommissioning" provision which provided that Tyco could decommission the network after five years without IDT's permission even though IDT has an indefeasible right to use the network for 15 years free of charge. Second, it required IDT to pay for the premature shutdown of the network despite IDT's entitlement to free access, as well as free operations, administration and maintenance of the network. In addition, IDT argues that the IRU required IDT to waive its damage remedies in the event that Tyco breached the settlement agreement, even though IDT had dismissed its prior claim against Tyco as part of the settlement agreement.

At the outset, we agree with IDT that the parties entered into a valid settlement agreement. "[S]tipulations of settlement are judicially favored and may not be lightly set aside" (*Matter of Kanter*, 209 AD2d 365, 365 [1st Dept 1994] [citation omitted]). As we said in *Hallock v State of New York* (64 NY2d 224, 230 [1984]), "strict enforcement [of settlement agreements] not only serves the interest of efficient dispute resolution but is also essential to the management of court calendars and integrity of

---

2. The parties debate whether the settlement is a Type I or Type II preliminary agreement as used in federal line of cases, such as *Brown v Cara* (420 F3d 148 [2d Cir 2005]) and *Teachers Ins. & Annuity Assn. of Am. v Tribune Co.* (670 F Supp 491 [SD NY 1987]). While we do not disagree with the reasoning in federal cases, we do not find the rigid classifications into "Types" useful. In reaching its decision the Appellate Division constructed a new category—a "contingent Type I agreement" (54 AD3d at 275). However, we find that it is enough to ask in this case whether the agreement contemplated the negotiation of later agreements and if the consummation of those agreements was a precondition to a party's performance. In the instant matter, it clearly was.

the litigation process." Although there was a valid settlement agreement in this case, Tyco's obligation to furnish capacity never became enforceable because agreed-upon conditions were not met.

"[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself. Consequently, 'a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms' " (*MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640, 645 [2009], quoting *Greenfield v Philles Records*, 98 NY2d 562, 569 [2002]). Further,

> "[a] condition precedent is 'an act or event, other than a lapse of time, which, unless the condition is excused, must occur before a duty to perform a promise in the agreement arises' (Calamari and Perillo, Contracts § 11-2, at 438 [3d ed]; *see*, Restatement [Second] of Contracts § 224; *see also, Merritt Hill Vineyards v Windy Hgts. Vineyard*, 61 NY2d 106, 112-113). Most conditions precedent describe acts or events which must occur before a party is obliged to perform a promise made pursuant to an existing contract, a situation to be distinguished conceptually from a condition precedent to the formation or existence of the contract itself (*see, M.K. Metals v Container Recovery Corp.*, 645 F2d 583)" (*Oppenheimer & Co. v Oppenheim, Appel, Dixon & Co.*, 86 NY2d 685, 690 [1995]).

Here, the settlement agreement contemplated the occurrence of numerous conditions, i.e., the negotiation and execution of four additional agreements, most importantly, the IRU. Regarding the IRU, the clear intent of the parties was that it had to be executed before any handover of capacity. As such, it cannot be said that defendants breached the settlement agreement by merely proposing an IRU which allegedly contained terms inconsistent with settlement.

Nevertheless, under the settlement agreement, the parties were required to negotiate the terms of the IRU and other agreements in good faith. Despite the fact that (1) the parties negotiated various open terms on and off for almost three years and (2) each side had a right to require conformance with Tyco's standard agreements, except to the extent that any term conflicted with the settlement agreement—i.e., the parties had

an alternative mechanism for determining those terms if the negotiations were unsuccessful—the IRU was never executed. Finally, the record does not support a finding that Tyco breached any of its obligations.

Accordingly, the order of the Appellate Division should be affirmed, with costs, and the certified question answered in the affirmative.

Judges CIPARICK, GRAFFEO, READ, SMITH and PIGOTT concur; Chief Judge LIPPMAN taking no part.

Order affirmed, etc.