[957 NYS2d 309]

IDT Corp. et al., Appellants, v Tyco Group, S.A.R.L., et al., Respondents.

First Department, December 27, 2012

## APPEARANCES OF COUNSEL

*Robins, Kaplan, Miller & Ciresi L.L.P.*, New York City (*Hillel I. Parness, Richard A. Mescon* and *Oren D. Langer* of counsel), for appellants.

*Dewey Pegno & Kramarsky LLP*, New York City (*Thomas E.L. Dewey* of counsel), for respondents.

## OPINION OF THE COURT

CATTERSON, J.

The parties in this breach of contract action have been engaged in a highly contentious business relationship since they agreed to form a joint venture to build a multi-billion dollar undersea fiber-optic telecommunications network almost 15 years ago. Between periods of litigation, the parties have spent the last 12 years unhappily and unsuccessfully negotiating the details of the plaintiffs' usage of such a network. We now find that the prior decisions of this Court and the Court of Appeals in favor of the defendants did not extinguish the defendants' obligation to continue negotiations with the plaintiffs in good faith.

The record reflects the following: In November 1999, IDT Corp. and IDT Europe, B.V.B.A. (collectively, plaintiffs) and Tyco Group, S.A.R.L., Tycom (US), Inc., Tyco International,

Ltd., Tyco International (US) Inc., and Tycom Ltd. (collectively, defendants) agreed to form a joint venture to construct a global fiber-optic telecommunications network spanning more than 70,000 undersea kilometers and connecting more than 25 cities in Europe, North America, and Asia. The efforts to form the joint venture failed, and the parties spent the next year bringing various federal and state actions against one another. In October 2000, the parties entered into a settlement agreement in which the plaintiffs agreed to release the defendants from all of their pending claims in exchange for the right to use a different undersea fiber-optic network for 15 years.

The defendants agreed to provide the plaintiffs, for their exclusive use, an "indefeasible right to use" (hereinafter referred to as an IRU) two wavelengths, free of charge, for 15 years, beginning in 2002 for one wavelength and 2003 for the second. The defendants also agreed to provide operations, administration and management (hereinafter referred to as OAM) for the wavelengths used by the plaintiffs for the same periods.

The settlement agreement further stated that the plaintiffs' IRU "shall be documented pursuant to definitive agreements *to be mutually agreed upon* and, in any event, contain[ ] terms and conditions consistent with those described" in the settlement agreement (emphasis added). The future agreements were to include terms governing, among other things, resale of capacity; provisioning, installation and commissioning of wavelengths; portability of capacity; and collocation services. Those agreements, including the IRU, were to be in writing and consistent with the defendants' standard agreements (which did not yet exist) with similarly situated customers or market rates, subject to any future negotiations between the parties.

After several years of unsuccessful negotiations, on May 4, 2004, the plaintiffs commenced a breach of contract action in Supreme Court. The plaintiffs alleged that the settlement agreement was a valid contract that obligated the defendants to provide IRU and OAM, and that the defendants had failed to supply the IRU and OAM in accordance with the terms of the agreement. The plaintiffs moved for partial summary judgment on the issue of liability, and the defendants cross-moved for summary judgment dismissing the complaint.

The motion court granted the plaintiffs' motion for partial summary judgment on the issue of liability and denied that portion of the defendants' cross motion seeking dismissal of the

complaint. The defendants appealed, and this Court reversed. (*IDT Corp. v Tyco Group, S.A.R.L.*, 54 AD3d 273 [1st Dept 2008].) We reasoned that the settlement agreement was a preliminary agreement that although "incomplete" nonetheless bound the parties to "their ultimate contractual objective upon the subsequent occurrence of a contingency"—namely, "either the insistence of one party on the terms of the standard agreements after they come into existence or a resolution of the remaining terms through further negotiation." (54 AD3d at 275 [internal quotation marks omitted].) We further found that under this agreement the parties were obligated to negotiate the open issues in good faith "unless and until one party were to insist on the terms of the standard agreements." (*Id.*) We concluded that the plaintiffs had erroneously asserted a breach of the agreement on the ground that the defendants' proposals for an IRU were inconsistent with those contemplated by the settlement agreement. Instead, we held that because the defendants' proposals were "hardly the sort of definite and final communication of an intent to forgo [their] obligations that is necessary to justify a claim of anticipatory breach," the defendants did not, as a matter of law, breach the settlement agreement. (54 AD3d at 275 [internal quotation marks omitted].)

The plaintiffs appealed and on October 22, 2009, the Court of Appeals affirmed. (*IDT Corp. v Tyco Group, S.A.R.L.*, 13 NY3d 209 [2009].) The Court held that the record did not support a finding that the defendants breached any of their obligations but that "under the settlement agreement, the parties were required to negotiate the terms of the IRU and other agreements in good faith." (13 NY3d at 214.) The Court found that the settlement agreement was valid, but that it "contemplated . . . the negotiation and execution of four additional agreements, most importantly, the IRU." (13 NY3d at 214.) The Court reasoned that although there was a valid contract, the defendants' "obligation to furnish capacity never became enforceable because agreed-upon conditions were not met." Thus, the Court concluded that the defendants did not "breach[ ] the settlement agreement by merely proposing an IRU which allegedly contained [three] terms inconsistent with settlement." (13 NY3d at 214.)

Subsequently, the parties resumed negotiations, but on November 15, 2010, the plaintiffs commenced this action in Supreme Court alleging that the defendants had breached the settlement agreement and their duty to negotiate in good faith.

The defendants moved to dismiss the complaint pursuant to CPLR 3211 (a) (7) (failure to state a cause of action), 3211 (a) (1) (documentary evidence) and 3211 (a) (5) (collateral estoppel/res judicata). The defendants argued that their obligations under the settlement agreement were extinguished by the Court of Appeals decision. The motion court agreed and granted the defendants' motion.

On appeal, the plaintiffs contend that the motion court erred, and should not have dismissed their complaint. For the reasons set forth below, we agree.

■ The motion court misconstrued the Court of Appeals decision in favor of the defendants. Specifically, the motion court focussed on the conclusion that, "[a]lthough there was a valid settlement agreement in this case, [the defendants'] obligation to furnish capacity *never became enforceable* because agreed-upon conditions were not met." (*IDT Corp.*, 13 NY3d at 214 [emphasis added].) It interpreted the highlighted phrase to mean that the defendants had "no further obligations under the [s]ettlement [a]greement." This was error.

The Court was simply observing that the allegations specified in the plaintiffs' first complaint did not articulate a breach at the time the action was commenced given the non-occurrence of a condition precedent: namely, the parties had not *yet* entered into final agreements, and the defendants had not otherwise breached their duty to negotiate.

More significantly, the cases relied upon by the motion court in which the failure to satisfy a condition precedent results in the discharge of further obligations under an agreement are distinguishable in that they involve incidents where performance of a condition precedent was required by a date certain. (*See MHR Capital Partners LP v Presstek, Inc.*, 12 NY3d 640 [2009] [plaintiff's failure to obtain a consent by close of business on June 22, 2004 relieved defendant of its obligation to perform under a stock purchase agreement].) Obviously, in those cases, the defendants had no further duty to perform under the contract because, having passed the date certain, the condition precedent could never be satisfied.

■ On appeal, the defendants additionally argue that "a contractual obligation must be performed within a reasonable time" and that, in this case, such time has passed. They further suggest that the plaintiffs are responsible for this protracted litigation, and through the defendants' disingenuous use of block

quoting,* imply that the Court of Appeals agreed and found that "enough was enough." There simply is no support for this proposition. The defendants' obligations in this case did not have an expiration date, nor, as the defendants urge, did one arise through the mere passage of time.

Moreover, this Court's decision, which the Court of Appeals affirmed, clarifies that the parties were obligated to continue to negotiate until either side insisted that the open terms be as set forth in the defendants' standard agreements. (54 AD3d at 275.) Since there was no evidence that either party insisted on this provision, the parties remained obligated to continue negotiations subsequent to the Court of Appeals decision.

█ Hence, accepting the allegations in the complaint as true, and according the plaintiffs the benefit of every possible favorable inference, as we must on a motion to dismiss (*Leon v Martinez*, 84 NY2d 83 [1994]), the plaintiffs here state a cause of action for breach of the agreement and breach of the duty to negotiate in good faith.

In this case, the plaintiffs allege that the defendants breached the agreement by frustrating the occurrence of the condition precedent in disavowing their obligation to negotiate. Specifically, the plaintiffs allege that on December 8, 2009, the defendants replied to the plaintiffs' communication and stated that, in light of the decisions of the Appellate Division and Court of Appeals, they no longer had any obligations under the settlement agreement.

The plaintiffs further allege that the defendants continued to disavow their obligations, while nevertheless appearing to consider the plaintiffs' proposals for the IRU, and while making their own proposals throughout 2009 and 2010.

Hence, even though the parties apparently continued to negotiate, the defendants' statements that they had no further

---

* The following is an excerpt from the defendants' brief:
"After three years of negotiations and five years of litigation, the Court of Appeals thoroughly—and definitively—rejected all [the plaintiffs'] claims. Specifically, the Court ruled that:
"a. the handover of capacity was subject to the 'condition precedent' of 'negotiation and execution of four additional agreements, most importantly, the IRU';
"b. 'the parties negotiated various open terms on and off for almost three years' but 'the IRU was never executed,' *through no fault of [the defendants]*; and thus
"c. '[The defendants'] obligation to furnish capacity never became enforceable.'" (Emphasis added.)

obligations to negotiate would constitute "a definite and final communication of an intent to forgo [the defendants'] obligations," which as we previously held, is an anticipatory breach of the contract. (54 AD3d at 276 [internal quotation marks omitted].) Moreover, it is well settled that "[w]here there has been an anticipatory breach of a contract by one party, the other party may treat the entire contract as broken and may sue immediately for the breach." (*Rachmani Corp. v 9 E. 96th St. Apt. Corp.*, 211 AD2d 262, 266 [1st Dept 1995] [internal quotation marks omitted]; *see e.g. Cole v Macklowe*, 64 AD3d 480 [1st Dept 2009] [defendant breached the parties' contract when he indicated to plaintiff that he did not consider the agreement binding].)

█ The plaintiffs' allegations also support a cause of action for the breach of the defendants' duty to negotiate in good faith. It is well established that a covenant of good faith and fair dealing is implied in all contracts. (*Dalton v Educational Testing Serv.*, 87 NY2d 384, 389 [1995].) This includes the promise that " 'neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.' " (*Id.*, quoting *Kirke La Shelle Co. v Armstrong Co.*, 263 NY 79, 87 [1933].) The obligation to negotiate in good faith bars a party from insisting on conditions that are materially at odds with an already established preliminary agreement. (*Credit Suisse First Boston v Utrecht-America Fin. Co.*, 80 AD3d 485 [1st Dept 2011].)

Here, the plaintiffs allege that on May 18, 2010, they provided a proposed "IRU Agreement," which the defendants rejected "without any justification." Instead, the defendants sent back the IRU with proposed changes that allegedly resulted in 10 "significant provisions" that were inconsistent with the terms of the settlement agreement. The plaintiffs allege that, despite several attempts to point out these inconsistencies, the defendants refused to entertain any other versions of the proposed IRU.

Furthermore, although neither the complaint nor the record are specific as to the 10 inconsistencies in the IRU proposed by the defendants in 2010, we must accept the plaintiffs' allegation that they are "significant." Since it is conceivable that the defendants could have proposed terms in 2010 that are so unreasonably inconsistent with the settlement agreement that they rise to the level of bad faith, it would be premature to dismiss this part of the complaint at the pleading stage.

■ Finally, contrary to the defendants' argument, the plaintiffs' claims of breach of the duty to negotiate in good faith and breach of contract are not barred by res judicata or collateral estoppel. The doctrine of res judicata bars any claim "arising out of the same transaction or series of transactions . . . even if based upon different theories or if seeking a different remedy." (*O'Brien v City of Syracuse*, 54 NY2d 353, 357 [1981].) Collateral estoppel "precludes a party from relitigating . . . an issue clearly raised in a prior action or proceeding and decided against that party" and that party had a "full and fair opportunity" to litigate the issue. (*Parker v Blauvelt Volunteer Fire Co.*, 93 NY2d 343, 349 [1999] [internal quotation marks omitted].)

As discussed above, the plaintiffs' current claims arise from the alleged actions and omissions of the defendants *after* the Court of Appeals decision. Thus, the conduct complained of now could not have been the basis for the breach of contract action previously dismissed by this Court and the Court of Appeals. Because this claim does not arise out of the same transactions or series of transactions previously litigated, this action is not barred by res judicata. Similarly, this action is not barred by collateral estoppel because the issues raised here were not raised or decided in the prior litigation. The defendants' assertions to the contrary, the defendants never argued in opposition to the previous breach of contract action that they had discharged their obligation to negotiate with the plaintiffs, nor did any court address that issue.

It should also be noted that the Court of Appeals did not previously determine the issue of whether the defendants' proposals were a breach of the duty to negotiate in good faith; it did not consider the substance or merit of the proposals; it simply held that the making of proposals was not a breach of the settlement agreement.

We have considered the defendants' remaining arguments and find them unpersuasive.

Accordingly, the order of the Supreme Court, New York County (Melvin L. Schweitzer, J.), entered June 20, 2011, which granted the motion of defendants Tyco Group, S.A.R.L., Tycom (US), Inc., Tyco International, Ltd., Tyco International (US) Inc., and Tycom Ltd. to dismiss the complaint pursuant to CPLR 3211 (a) (7), should be reversed, on the law, with costs, and the motion denied.

FRIEDMAN, J. (concurring). I concur in reversing the order ap-

pealed from, and in denying the motion to dismiss the complaint, on the following grounds. In granting summary judgment dismissing the complaint in the previous action (*see IDT Corp. v Tyco Group, S.A.R.L.*, 13 NY3d 209 [2009], *affg* 54 AD3d 273 [2008]), neither the Court of Appeals nor this Court held that the obligations of defendants (collectively, Tyco) under the parties' 2000 settlement agreement had been discharged. Rather, the basis for the dismissal of the earlier action was that the post-discovery record on which those appeals were decided established that, during the period reflected in the record, Tyco had merely proposed terms inconsistent with the settlement and had not definitively repudiated its obligation to abide by the terms of the settlement agreement, if insisted upon by plaintiffs (collectively, IDT) (*see* 13 NY3d at 214-215; 54 AD3d at 275-276). In the present action—which is still at the pleading stage, Tyco having moved to dismiss the new complaint under CPLR 3211 (a) (1), (5) and (7)—IDT specifically alleges that, in October 2010 (after the earlier action had been dismissed), Tyco went beyond merely proposing terms inconsistent with the settlement agreement and

> "insist[ed] on terms that conflicted with the Settlement Agreement and made a definite and final communication to IDT of Tyco's intent to forgo its obligations under the Settlement Agreement, including its obligation to provide to IDT the use of the Wavelengths described in the Settlement Agreement for fifteen years and in a manner fully consistent with that described in the Settlement Agreement."

Given our obligation, at this pre-discovery stage of the proceeding, to assume the truth of the allegations of the complaint and to draw all reasonable inferences in favor of the pleader, the above-quoted allegation of paragraph 50 of the present complaint suffices to sustain the causes of action asserted therein for breach of the settlement agreement and breach of the obligation to negotiate in good faith. Again, it has never been adjudicated that Tyco's obligations under the settlement agreement have been discharged. Further, the conduct described in paragraph 50 of the present complaint allegedly occurred after the dismissal of the previous action, and neither of the appellate decisions dismissing the previous complaint held that conduct of that kind, if proven, would not constitute a breach of Tyco's obligations. Accordingly, the dismissal of the previous action does not bar the present action as either res judicata or collateral estoppel.

Tom, J.P., and Acosta, J., concur with Catterson, J.; Fried-man, J., concurs in a separate opinion in which Freedman, J., concurs.

Order, Supreme Court, New York County, entered June 20, 2011, reversed, on the law, with costs, and the motion denied.