**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3968
_____

WHITE WINSTON SELECT ASSET FUNDS, LLC,
Appellant

v.

INTERCLOUD SYSTEMS, INC.
_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 3:13-cv-07825)
District Judge: Hon. Freda L. Wolfson
_____

Submitted Under Third Circuit LAR 34.1(a)
July 16, 2015
_____

Before: SMITH, GREENAWAY, JR. and SHWARTZ, <u>Circuit Judges</u>.

(Filed: August 4, 2015)
_____

OPINION[*]
_____

SHWARTZ, <u>Circuit Judge</u>.

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

White Winston Select Asset Funds, LLC ("White Winston") appeals the District Court's order dismissing its Complaint against InterCloud Systems, Inc. ("InterCloud") under Fed. R. Civ. P. 12(b)(6). We will reverse and remand.

I

We draw the following facts from White Winston's Complaint, accepting them as true in accordance with our standard of review.[1] In May 2013, White Winston proposed investing up to $5,000,000 in InterCloud (the "Financing"). On July 24, 2013, the parties executed a "Term Sheet" detailing the terms of the Financing. App. 29. In exchange for the investment, White Winston would receive a debenture with a one-year term in an amount up to $5,000,000, with InterCloud to pay 12% interest during the term, shares of common stock at closing, and the right to purchase additional stock.

The Term Sheet "expected" the closing "to occur on or about July 29, 2013, but not before the completion of [White Winston's] due diligence and the satisfaction of all conditions precedent" to closing. App. 48. One condition precedent required White Winston to "conduct a review and due diligence examination of . . . [InterCloud]'s books and records." App. 50. Another condition precedent required White Winston to enter into an intercreditor agreement with MidMarket Capital Partners, LLC ("MidMarket"), under which MidMarket would be the only creditor with a security interest in InterCloud senior to that of White Winston.

---

[1] See infra n.4.

2

Paragraph 17(d) of the Term Sheet required InterCloud to pay White Winston a "break-up" fee if White Winston was prepared to close the Financing within 45 days of the "Termination Date" but InterCloud failed to close because it had obtained other financing.[2]  App. 33, 52.  Under the break-up fee provision, if InterCloud obtained financing from "any other lender, investor, or other party" within the 45-day period, then it would pay White Winston $500,000.  App. 52.  White Winston told InterCloud that the break-up fee was "an essential provision" of the Term Sheet.  App. 34.  In addition to the break-up fee, Paragraph 18 of the Term Sheet required InterCloud to pay "all of [White Winston's] reasonable costs, fees and expenses . . . incurred in conjunction with the consideration of the Financing."  App. 52.

Both Paragraphs 17(d) and 18 were intended to survive termination of the Term Sheet.  On this point, Paragraph 22 expressly stated that "[u]pon the [T]ermination Date," the Term Sheet "shall be deemed null and void and all further rights and liabilities of the parties hereto by reason of this Term[] Sheet shall terminate other than with respect to Sections 17(d), 18 and 19[,] which shall survive the Termination Date."  App. 53.  The Term Sheet also contained the following disclaimer:

> This Term Sheet is intended for use only as the basis for continued discussion between [InterCloud] and [White Winston], and does not constitute a commitment letter, an agreement to enter into a commitment letter or an offer to enter into a commitment letter and shall not be deemed

---

[2] Paragraph 22 identified the Termination Date as "the earlier" of November 15, 2013 or thirty days after written notice from InterCloud of its intention not to proceed with the Financing.  App. 53.

3

to obligate [White Winston], its affiliates, partners, or principals to close the Financing under any terms or circumstances.

App. 53 (capitalization omitted). Under the clause, there was no commitment to provide financing.

In the months that followed, White Winston incurred expenses conducting due diligence and preparing documentation. However, on or about September 20, 2013, unbeknownst to White Winston, InterCloud obtained both financing from PNC Bank, N.A. (the "PNC Facility") and MidMarket's consent to grant PNC a senior security interest in InterCloud's assets. These events, together with InterCloud's December 13, 2013 issuance of convertible debentures to another investor, made it unnecessary for InterCloud to close the Financing with White Winston.

Upon learning of the PNC Facility and InterCloud's amendment of its loan agreement with MidMarket, White Winston demanded that InterCloud furnish the break-up fee. InterCloud refused, and White Winston filed this Complaint alleging breach of contract (Count One), breach of the implied duty of good faith and fair dealing (Count Two), and promissory estoppel (Count Three), and seeking the $500,000 break-up fee under Paragraph 17(d) and approximately $33,000 in expenses and collection efforts under Paragraph 18. The District Court granted InterCloud's motion to dismiss under Fed. R. Civ. P. 12(b)(6), and White Winston appeals.[3]

---

[3] White Winston does not appeal dismissal of its claim for breach of the implied duty of good faith and fair dealing.

II[4]

A

1

We first address the District Court's dismissal of White Winston's breach of contract claim. The "essential elements" of a breach of contract claim "are the existence of a contract, the plaintiff's performance pursuant to the contract, the defendant's breach of his or her contractual obligations, and damages resulting from the breach."[5] Neckles Builders, Inc. v. Turner, 986 N.Y.S.2d 494, 496 (App. Div. 2014). "'[A] contract is to be construed in accordance with the parties' intent, which is generally discerned from the four corners of the document itself.'" IDT Corp. v. Tyco Grp., 918 N.E.2d 913, 916 (N.Y. 2009) (alteration in original) (quoting MHR Capital Partners LP v. Presstek, Inc., 912 N.E.2d 43, 47 (N.Y. 2009)). A court "must" construe the contract "to accord a meaning and purpose to each of its parts," Graphic Scanning Corp. v. Citibank, N.A., 499 N.Y.S.2d 712, 714 (App. Div. 1986), and "should not adopt an interpretation which will operate to leave a provision of a contract without force and effect," Laba v. Carey, 277 N.E.2d 641, 644 (N.Y. 1971) (internal quotation marks and ellipsis omitted). While "a

---

[4] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's dismissal de novo and apply the same standard as the District Court. Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co., 768 F.3d 284, 290 (3d Cir. 2014). Under this standard, we accept all facts alleged in the Complaint as true, construe them in the light most favorable to Plaintiff, id., and determine whether the Complaint "contain[s] sufficient factual matter . . . to 'state a claim to relief that is plausible on its face,'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[5] The Term Sheet provides, and the parties agree, that New York law applies.

5

mere 'agreement to agree'" is unenforceable, <u>Prospect St. Ventures I, LLC v. Eclipsys Solutions Corp.</u>, 804 N.Y.S.2d 301, 302 (App. Div. 2005), "parties may enter into a binding contract under which the obligations of the parties are conditioned on the negotiation of future agreements," <u>IDT Corp. v. Tyco Grp.</u>, 15 N.E.3d 329, 331–32 (N.Y. 2014).

The District Court dismissed Count One first by considering whether the Term Sheet constituted a "Type I" or "Type II" agreement, a taxonomy many New York federal courts have used to determine whether a particular document constitutes an enforceable agreement. App. 14–17. Type I agreements are those in which the parties have reached a complete agreement on all terms that require negotiation but have not yet memorialized that agreement in a formal writing. <u>Brown v. Cara</u>, 420 F.3d 148, 154 (2d Cir. 2005). Type II agreements are those that express an agreement "on certain major terms" and a "mutual commitment to negotiate together in good faith in an effort to reach final agreement." <u>Adjustrite Sys., Inc. v. GAB Bus. Servs., Inc.</u>, 145 F.3d 543, 548 (2d Cir. 1998) (internal quotation marks omitted).[6]

Despite its use by federal courts in New York, the New York Court of Appeals has rejected the Type I–Type II taxonomy as "rigid" and not "useful." <u>IDT Corp.</u>, 918 N.E.2d at 915 n.2. Since we are bound to follow New York state law, we will not follow the taxonomy. Rather, as required by New York law, we will consider whether the

---

[6] The District Court concluded that the Term Sheet was neither a Type I nor Type II agreement but was instead an entirely unenforceable preliminary agreement that did not even obligate the parties to negotiate in good faith.

agreement contemplates negotiating later agreements and whether such agreements are a precondition to a party's performance. Id.

Viewed in the light most favorable to White Winston, the pleading here reveals that certain obligations were triggered by such later agreements, while other obligations expressly were not. For instance, the Term Sheet states that InterCloud "shall" pay White Winston a break-up fee if InterCloud "fails to close" because it secured financing "through another source," App. 52, and expressly provides that InterCloud's obligation to pay this fee "shall survive the Termination Date" of the Term Sheet, App. 53. The Term Sheet specifically states that upon the Termination Date, the Term Sheet "shall be deemed null and void and all further rights and liabilities of the parties hereto by reason of this Term[] Sheet shall terminate other than with respect to" the break-up fee and expense reimbursement provisions. App. 53. This language demonstrates that the break-up fee and expenses provisions were not subject to further agreements and were intended to survive the Termination Date.

While the District Court correctly noted that the Term Sheet did not obligate White Winston to invest, speaks of a "proposed secured financing," and purports only to "summarize[]" the terms for and provide "the basis for continued discussions" of White Winston's $5 million loan to InterCloud, App. 44, 53, these caveats say nothing about InterCloud's obligation to pay White Winston the break-up fee or reimburse it for expenses. Indeed, a plausible reading of the break-up fee clause, which White Winston allegedly told InterCloud "was an essential provision of the Term Sheet," App. 34, was to

7

protect White Winston from the risk that InterCloud would secure a more favorable deal after White Winston had already expended resources on the Financing. Thus, given the language of the Term Sheet, we decline to read the Term Sheet in a manner that "would operate to leave [a] provision of the contract . . . without force and effect." Spaulding v. Benenati, 442 N.E.2d 1244, 1247 (N.Y. 1982); see also Graphic Scanning Corp., 499 N.Y.S.2d at 714 (rejecting defendant's interpretation that "would render superfluous [a] provision of the agreement"). Thus, it was "premature" to dismiss Count One and we will reinstate White Winston's breach of contract claim. Emigrant Bank v. UBS Real Estate Sec., Inc., 854 N.Y.S.2d 39, 40–41 (App. Div. 2008).

2

InterCloud's alternative theories do not support dismissal. InterCloud asserts that: (i) White Winston failed to satisfy various conditions precedent to payment of the break-up fee; and (ii) the break-up fee constitutes an unenforceable penalty under New York law. We decline to dismiss Count One on these grounds.[7] As to InterCloud's condition precedent argument, the Complaint alleges that "InterCloud failed to close" the Financing

---

[7] InterCloud also asserts that White Winston waived any argument based upon a theory that the Term Sheet constituted a "unilateral contract." White Winston's failure to use the words "unilateral contract" before the District Court does not constitute a waiver under these circumstances. The Complaint arguably embodies such a theory. Taking the Complaint's allegations as true, we assume that, before seeking the break-up fee, White Winston performed its due diligence, attempted to enter the required intercreditor agreement with MidMarket, and was prepared to close the Financing and so informed InterCloud. These allegations sufficiently embody a unilateral contract. Moreover, even if White Winston's failure to argue a "unilateral contract" theory to the District Court constituted a waiver, InterCloud had notice of allegations that might support this theory and therefore we would decline to enforce such a waiver.

"due to its arrangement of financing through another source," App. 37, and that White Winston "remained willing and prepared to close the Financing" as outlined in the Term Sheet, App. 34. The Complaint also alleges that InterCloud's amendment of its loan agreement with MidMarket "precluded" White Winston from executing the required intercreditor agreement. App. 35. Accepting these facts as true, they may well be sufficient to show the conditions to obtain the break-up fee were satisfied or meeting them was rendered impossible by InterCloud's alleged actions, so dismissal based on the condition precedent argument seems "unwarranted in the present procedural context." Foster v. Kovner, 840 N.Y.S.2d 328, 332–33 (App. Div. 2007) (reinstating breach of contract claim where "documentary evidence [did not] conclusively establish[] the parties merely had an agreement to agree," despite "cogent argument" that the parties "never reached an agreement on many of the essential terms").

As to whether the break-up fee constitutes an unenforceable penalty, this presents "a question of law, giving due consideration to the nature of the contract and the circumstances." 172 Van Duzer Realty Corp. v. Globe Alumni Student Assistance Ass'n, Inc., 25 N.E.3d 952, 957 (N.Y. 2014). A court applying New York law should find a provision unenforceable as a penalty only in "rare cases," Fifty States Mgmt. Corp. v. Pioneer Auto Parks, Inc., 389 N.E.2d 113, 116 (N.Y. 1979), and "[t]he burden is on the party seeking to avoid liquidated damages . . . to show that the stated liquidated damages are, in fact, a penalty," JMD Holding Corp. v. Congress Fin. Corp., 828 N.E.2d 604, 609 (N.Y. 2005). On the limited record before us, we cannot determine whether InterCloud

9

has met this burden and thus decline to affirm the District Court's dismissal of Count One on this basis.

B

We next address the dismissal of White Winston's promissory estoppel claim under Count Three. "To establish a claim for promissory estoppel, a plaintiff must allege '(1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise is made, and (3) an injury sustained in reliance on the promise.'" Sabre Int'l Sec., Ltd. v. Vulcan Capital Mgmt., Inc., 944 N.Y.S.2d 36, 42 (App. Div. 2012) (quoting Gurreri v. Assocs. Ins. Co., 669 N.Y.S.2d 629, 631 (App. Div. 1998)). The District Court dismissed Count Three because the "disclaimer language at the end of the Term Sheet clearly evinces that all promises [therein] were contingent upon the signing of a future contract." App. 22. As we explained above, the District Court read the Term Sheet's disclaimer to eviscerate every obligation set forth in the Term Sheet despite the specific language in Paragraph 22 that provides that the break-up fee and expenses provisions survive termination. At this stage, we will not read the disclaimer language to preclude enforcement of the break-up fee and expenses provisions. Therefore, we will reverse the dismissal of this claim. See, e.g., Forman v. Guardian Life Ins. Co. of Am., 908 N.Y.S.2d 27, 31 (App. Div. 2010) (affirming denial

of motion to dismiss breach of contract claim and "alternative [] quasi-contractual" promissory estoppel claim).[8]

III

For the foregoing reasons, we will reverse the dismissal of Counts One and Three and remand for further proceedings.

---

[8] We also reject InterCloud's contention that "the promissory estoppel claim is improperly duplicative" of Count One.  Appellee Br. 26.  While it may be redundant and subject to dismissal should White Winston's contract claim survive summary judgment and trial, it may be pleaded in the alternative.  Fed. R. Civ. P. 8(a)(3); see also Cohn v. Lionel Corp., 236 N.E.2d 634, 637 (N.Y. 1968) ("Undeniably, a plaintiff is entitled to advance inconsistent theories in alleging a right to recovery."); Winick Realty Grp. LLC v. Austin & Assocs., 857 N.Y.S.2d 114, 115 (App. Div. 2008) ("[S]ince plaintiff is entitled to plead inconsistent causes of action in the alternative, the quasi-contractual claims are not precluded by the pleading of a cause of action for breach of an oral agreement.").