[993 NYS2d 866]

45-48 47TH STREET CORP., Respondent, v ERIN MURPHY, Appellant.

Supreme Court, Appellate Term, Second Department,
2d, 11th and 13th Judicial Districts, July 9, 2014

APPEARANCES OF COUNSEL

*Erin Murphy*, appellant pro se.

*Marino & Scotti*, Corona (*Autrey G. Johnson* of counsel), for respondent.

**OPINION OF THE COURT**

MEMORANDUM.

Ordered that the order is reversed, without costs, tenant's motion to vacate the stipulation of settlement and the final judgment entered pursuant thereto is granted, and the matter is remitted to the Civil Court for all further proceedings.

It is noted at the outset that, contrary to the argument advanced by landlord in its respondent's brief, this appeal was properly perfected (*see* CCA 1704 [b]). While landlord contends that the appeal should be deemed abandoned because tenant failed to settle the transcript, the record does not reflect that any testimony was taken so as to require the settlement of a transcript pursuant to CCA 1704 (a).

In this holdover summary proceeding based upon tenant's alleged failure to sign a renewal lease for her rent-stabilized apartment, tenant entered into a stipulation on May 20, 2012, pursuant to which she agreed to, among other things, vacate the apartment by June 30, 2012. In return, landlord waived four months' rent. A final judgment was entered, with execution of the warrant stayed in accordance with the stipulation. Subsequently, pursuant to a second stipulation, tenant received an extension of time to vacate the apartment and paid all of the use and occupancy that had accrued, including the four months' use and occupancy that had been waived pursuant to the initial stipulation. Thereafter, tenant moved to vacate the first stipulation and the final judgment entered pursuant thereto on the ground that she had not been offered a renewal lease in accordance with the Rent Stabilization Code and that she had signed the stipulation under great pressure. The Civil Court denied

tenant's motion, finding that tenant had not demonstrated good cause to vacate the first stipulation and specifically noting that tenant had received the benefit of the stipulation.

The court retains control over the enforcement of stipulations and may relieve a party from the terms thereof where it appears that the stipulation was entered into inadvisably or that it would be inequitable to hold the parties to the stipulation (*Matter of Frutiger*, 29 NY2d 143, 149-150 [1971]; *Cabbad v Melendez*, 81 AD2d 626 [1981]). Here, contrary to the Civil Court's finding, tenant did not receive the benefit of her bargain, as she ultimately paid the four months' use and occupancy initially waived by landlord in exchange for her consenting to vacate the subject apartment. Furthermore, tenant has demonstrated a potentially meritorious defense, as nothing in the record, which is replete with conflicting information about the tenancy, suggests that landlord had complied with the Rent Stabilization Code by providing a proper renewal lease with proper notice (*see e.g.* Rent Stabilization Code [9 NYCRR] § 2523.5 [a]). In addition, it appears that tenant also inadvertently waived her right to a postjudgment period in which to cure her alleged failure to sign a renewal lease, should it have been found that a proper lease had been offered (*see Barmat Realty Co., LLC v Quow*, 39 Misc 3d 151[A], 2013 NY Slip Op 50977[U] [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2013]).

Accordingly, the order is reversed, tenant's motion to vacate the stipulation of settlement and the judgment of possession entered pursuant thereto is granted, and the matter is remitted to the Civil Court for all further proceedings.

WESTON, J. (dissenting and voting to affirm the order in the following memorandum). I refuse to vacate tenant's agreed-upon stipulation of settlement and the final judgment entered pursuant thereto. To do so in this case not only usurps the Civil Court's authority over enforcement of its stipulations, but undermines the independence of the Civil Court, which had the opportunity, firsthand, to witness tenant's flagrant defaults under two so-ordered stipulations. In my opinion, tenant's exhaustive list of unsubstantiated excuses and off-the-record allegations are patently insufficient to set aside the stipulation of settlement. Accordingly, I must dissent.

On May 20, 2012, tenant entered into a binding stipulation in which she agreed to a final judgment of possession in exchange for a stay of execution of the warrant of eviction until June 30,

2012. Tenant further agreed that in exchange for no further stays, landlord would waive monthly use and occupancy for March through June, but if tenant paid one month's use and occupancy by June 15, 2012, execution of the warrant would be stayed until July 31, 2012. Tenant waived all jurisdictional defenses and agreed to withdraw all Division of Housing and Community Renewal cases against landlord. Despite this agreement, tenant applied, by order to show cause, to extend her time to vacate the premises. On July 25, 2012, tenant entered into a second so-ordered stipulation, in which she agreed to pay the arrears, plus use and occupancy through September 2012, in exchange for a stay of execution of the warrant until September 30, 2012. Again, tenant failed to vacate as promised. Instead, she brought two other orders to show cause, one of which was refused. This time, tenant sought to vacate the final judgment of possession and the underlying stipulation, alleging that she was unaware of her rights as a rent-stabilized tenant and that she was unable to find another apartment. In my opinion, tenant's motion was properly denied.

It is well settled that stipulations of settlement "are favored by the courts and not lightly cast aside" (*Hallock v State of New York*, 64 NY2d 224, 230 [1984] [citations omitted]). Strict enforcement of such settlements not only promotes swift resolution of cases, but is also "essential to the management of court calendars and integrity of the litigation process" (*id.*). "Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be relieved from the consequences of a stipulation made during litigation" (*id.*).

Here, tenant does not dispute that she failed to honor the terms of the stipulation, but rather claims that she was under pressure at the time she executed the stipulation. Tenant's claims of duress and coercion are belied by the record. Having had ample opportunity to observe tenant firsthand, the Civil Court found that tenant, an intelligent educator, was fully capable of negotiating her rights, which she did. It is not for this court to second-guess that finding based on a litany of tenant's bald, self-serving excuses.

Nevertheless, today's decision inexplicably finds that tenant should no longer be bound by the terms of her contract. The message sent to landlords and Civil Court judges by the decision is clear: it does not matter, as the court below found, if "a great deal of time" is spent in conference with the parties, nor does it matter if the litigant before you is "an articulate, intelligent

[person] who engage[s] the court in extensive discussion [and] clearly [understands] the terms of the agreement as well as her obligations under the stipulation." As long as a tenant is self-represented and cannot find an apartment in the neighborhood of her choice, the stipulation will invariably be undone on appeal, regardless of whether there is evidence of duress, fraud, collusion, mistake or accident.

Moreover, to conclude that tenant did not receive the benefit of her bargain based on her payment of use and occupancy is without any rational basis. The stipulation was the resolution of a holdover proceeding, not a nonpayment proceeding. The decision overlooks the fact that pursuant to the first stipulation, tenant was not obligated to pay use and occupancy in consideration for her agreeing to vacate the premises by a specified date. The obligation to pay the waived amount as set forth in the second stipulation only arose because tenant failed to vacate as promised. Thus, the fact that tenant paid the arrears is of no moment and does not diminish the fact that from May 20, 2012 to September 30, 2012, tenant received exactly what she bargained for—an extension of time to find another apartment.

Finally, I disagree with the majority's conclusion that tenant demonstrated a meritorious defense that "nothing in the record . . . suggests that landlord had complied with the Rent Stabilization Code" (majority op at 25). Other than belated, largely unsworn allegations regarding her tenancy, tenant has produced nothing in support of such a defense. To the contrary, tenant was fully aware of her rights as a rent-stabilized tenant long before she entered into the stipulation. In March 2012, tenant was served with a 15-day notice to terminate for failure to renew the lease. That same month, tenant filed a complaint with the New York State Division of Housing and Community Renewal (DHCR) alleging, as she does now, that landlord failed to offer her a proper renewal lease and contesting the amount of rent paid. By the time tenant had executed the first stipulation, her claim with DHCR had been pending for two months. On this record, it cannot be said that tenant was unaware of her rights under the Rent Stabilization Law. In any event, tenant knowingly waived those rights when she agreed, in the first stipulation, to withdraw all DHCR cases against landlord. I see no reason to consider her defenses now.

For this court to question the equities and advisability of tenant's stipulation is an affront not only to the court below, which had painstakingly reviewed the terms of the stipulation

with tenant before she signed it, but to all the Civil Court judges and litigants who routinely seek swift, judicial closure by way of so-ordered stipulations. By relieving this tenant of the consequences of her agreement, today's decision casts doubt on the effectiveness of all so-ordered stipulations. Indeed, tenants would be encouraged to agree to terms that they could never fulfill in the hope that the judicial system will ultimately relieve them from their obligations. In this case, tenant twice negotiated stipulations of settlement which clearly set forth her obligations and afforded her ample time to find another apartment. To involve the courts in these circumstances, especially where tenant does not dispute her default, is nothing more than a waste of valuable judicial resources.

Accordingly, I vote to affirm the order of the Civil Court.

PESCE, P.J., and SOLOMON, J., concur; WESTON, J., dissents in a separate memorandum.