OPINION OF THE COURT
Jeffrey S. Brown, J.
Motion by plaintiffs brought by order to show cause for an order: (a) directing defendants to comply with the provisions of the stipulation of settlement executed by all of the parties on April 28, 2016; (b) directing counsel for Irene Becker and the Estate of Lazar Becker (collectively, the Becker defendants) to deliver to plaintiffs’ counsel the original general releases executed by all of the defendants dated April 28, 2016; (c) directing counsel for Irene Becker and the Estate of Lazar Becker to deliver to plaintiffs’ counsel the original stipulation of settlement executed by all of the defendants; (d) directing counsel for Lauren Becker Burns and David Burns (the Burns defendants) to execute a stipulation of discontinuance with prejudice dated May 10, 2016, as required by the stipulation of settlement; (e) alternatively declaring the defendants to be in default by failing to answer the plaintiffs’ complaint in a timely manner and permitting plaintiffs to proceed to an inquest against the defendants on the claims as set forth in their complaint; (f) *759 barring and enjoining the defendants Lauren Becker Burns and David Burns from proceeding on their counterclaims contained in their purported amended answer, which plaintiffs assert was untimely served; (g) awarding plaintiffs’ attorney’s fees; and (h) such other relief as the court deems just and proper.
Cross motion by the Becker defendants for an order (a) compelling plaintiffs to deliver to Irene Becker releases and a stipulation of discontinuance of this action limited to Irene Becker; or, alternatively, (b) granting Irene Becker leave to serve an answer or otherwise move to dismiss the complaint in this action; and awarding such other relief as the court deems just and proper, including attorney’s fees.
Cross motion by the Burns defendants for an order compelling the plaintiffs to accept the answer and amended answer and counterclaims served by the Burns defendants, together with costs and attorney’s fees; and awarding such other relief as the court deems just and proper.
The background of this action is set forth in the court’s January 4, 2016 decision and order (Friedman v Burns, Sup Ct, Nassau County, Jan. 4, 2016, Brown, J., index No. 6480/14).
Plaintiff Shari Friedman is the mother of plaintiffs Jenny Friedman, Scott Friedman and Nicole Friedman.
Defendant Lauren Becker Burns is Shari’s sister. David Burns is Lauren’s husband.
Defendant Irene Becker is the mother of Shari and Lauren and the grandmother of plaintiffs Jenny, Scott and Nicole.
Lazar Becker died on December 27, 2014. Lazar was the husband of Irene, the father of Shari and Lauren and the grandfather of Jenny, Scott and Nicole. Irene has been appointed executor of Lazar’s estate.
The Friedmans’ complaint alleges that from 1998 through 2008, Irene and Lazar bought United States savings bonds and at various times registered them in the individual names of either Jenny, Scott, Nicole or Shari, the plaintiffs in this action. At some point while Lazar was alive, he and Irene decided to cash in the bonds. The complaint sets forth two causes of action: conversion and breach of bailment.
After months of litigation, the parties entered into a stipulation of settlement on April 28, 2016. Attached to their motion, plaintiffs submit the stipulation, fully executed in counterparts, which provides among other things:
*760 “[I]n consideration of the covenants and undertakings herein, it is stipulated and agreed, by and between the plaintiffs and defendants as follows:
“1. Plaintiffs agree to discontinue this Action, with prejudice and without costs, effective as of the date of this Stipulation and Settlement.
“2. Defendants shall not serve nor file Answers in this Action.
“3. No sum of money shall be paid by any Defendant to any Plaintiff in consideration of the discontinuance of this Action, although the Releases described below may recite as nominal consideration therefore: ‘One Dollar and Other Good and Valuable Consideration.’
“4. Plaintiffs and Defendants hereby authorize their respective attorneys to execute a Stipulation of Discontinuance of this Action, with prejudice and without costs in the form annexed hereto as Exhibit A.
“5. Plaintiffs and Defendants shall execute and exchange simultaneously with this Stipulation of Settlement full and complete Releases of each other, in the form annexed hereto as Exhibit B.
“6. Simultaneous with the execution of this Stipulation of Settlement, Plaintiffs shall deliver to Defendants, or to their attorneys, the items of personal property identified in Exhibits C and E, and Defendants shall deliver to Plaintiffs, or their attorney, the items of personal property identified in Exhibit D. . . .
“12. This Stipulation of Settlement contains all of the terms agreed upon between and among the parties with respect to the subject matter hereof and has been entered into after full investigation by the Parties and their respective counsel. . . .
“14. This Stipulation of Settlement shall not be altered, amended, changed, modified, waived or terminated in any respect or particular unless the same shall be in writing signed by all of the Parties, or their legal representatives or attorneys, regardless of which party may be bound thereby. . . .
“16. This Stipulation of Settlement may be executed and exchanged by email in PDF format *761 and/or by facsimile, in counterparts which, when signed by all parties hereto and taken together will be deemed to form a single document.”
In addition, the stipulation of settlement included terms that waived plaintiffs’ claims against the estate of Lazar Becker and the estate of Irene Becker, as may be created upon her death, and included terms that discharged plaintiffs’ claims concerning certain United States savings bonds that were the basis of plaintiffs’ complaint in this action. Further, attached to the plaintiffs’ motion is a fully executed release and discharge signed by Lauren Becker Burns, David Burns, Irene Becker individually and Irene Becker as executor, in favor of the plaintiffs.
Finally, plaintiffs submit a stipulation of discontinuance dated May 10, 2016 and signed by counsel for the plaintiffs and counsel for the Becker defendants. The signature of counsel for the Burns defendants is not included.
According to counsel for the plaintiffs, after extensive settlement negotiations, the parties reached a resolution and agreed to execute a settlement agreement and ancillary documents, and to exchange certain enumerated items of personal property. A meeting of the parties was scheduled for the afternoon of May 10, 2016. Present at the meeting was Shari Friedman, Scott Friedman and their attorney on behalf of the plaintiffs. Counsel for Irene Becker was present on behalf of the defendants. Counsel for Irene Becker read off each item of the 15 items of personal property from exhibits C and E and inspected each item as it was handed over. Among the items of personal property to be delivered to defendant Lauren Becker Burns according to exhibit E were a black fur mink coat with a notch collar and a black pant length shearling coat with notch collar and button closure. Counsel for Irene Becker then turned over copies of the fully executed stipulation of settlement and general releases and agreed to provide the original documents on Monday, May 16. Thereafter, counsel for plaintiffs was notified by counsel for the Burns defendants that the black fur mink jacket and the black shearling jacket provided at the exchange were the incorrect items. As a result, counsel for the Burns defendants refused to execute the stipulation of discontinuance and directed counsel for the Becker defendants to refrain from delivering the original stipulation and general releases.
According to counsel for the Becker defendants, the plaintiffs breached their obligations to deliver to Mrs. Becker and the *762 Bums defendants all of the personal property identified in the stipulation, but Mrs. Becker is willing to forgo items of personal property that should have been, but were not, delivered to her. Accordingly, counsel for the Becker defendants contends that the action is resolved as between plaintiffs and the Beckers, the stipulation of settlement should be deemed separable, and releases and discontinuance should be ordered in favor of the Becker defendants only. Plaintiffs contest the severability of the stipulation.
According to counsel for the Burns defendants, the return of the specified items was a condition to a perfected and binding agreement. Failure of the plaintiffs to deliver the proper items of personal property resulted in a failure of consideration and, thus, no binding agreement. In addition, counsel for the Burns defendants contends that the right of rescission arises where a contracting party fails to receive the bargained for consideration under an agreement. Further, counsel also emphasizes that the items to be exchanged were actually the property of Lauren Becker Burns and were merely stored at Shari Friedman’s home.
Although the parties dispute whether the items delivered to the Burns were, in fact, the correct items contemplated by the stipulation, there is no dispute that the Burns have kept the items that were delivered. Moreover, the counsel for the plaintiffs contends that even if the two coats delivered to the Burns defendants were incorrect, such nonperformance would be a breach of contract, and an immaterial breach at that.
CPLR 2104 states that
“[a]n agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered.” (Emphasis added.)
Stipulations of settlement “are favored by the courts and [are] not lightly cast aside.” (Hallock v State of New York, 64 NY2d 224, 230 [1984].) “Parties by their stipulations may in many ways make the law for any legal proceeding to which they are parties, which not only binds them, but which the courts are bound to enforce. They may stipulate away statutory, and even constitutional rights” (Matter of New York, Lackawanna & W. R.R. Co., 98 NY 447, 453 [1885]).
Only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident, will a party be *763 relieved from the consequence of a stipulation made during litigation. (See Nigro v Nigro, 44 AD3d 831 [2d Dept 2007] [finding no evidence that parties settled the action as a result of fraud, collusion, mistake, or accident].) The court retains control over the enforcement of stipulations and may relieve a party from the terms thereof where it appears that the stipulation was entered into inadvisably or that it would be inequitable to hold the parties to the stipulated terms. (See 45-48 47th St. Corp. v Murphy, 45 Misc 3d 23 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2014].) “[W]here to enforce a stipulation would be unjust or inequitable or permit the other party to gain an unconscionable advantage, courts will afford relief.” (Weitz v Murphy, 241 AD2d 547, 548 [2d Dept 1997].)
In Yonkers Fur Dressing Co. v Royal Ins. Co. (247 NY 435, 446 [1928]), a case cited by the Becker defendants, on a motion to set aside a settlement, the Court of Appeals explained that
“[t]he agreement of settlement was, under these circumstances, entered into by defendants, not lightly, inadvertently, inadvisedly or improvidently, but in order to make the best terms possible with the plaintiff. The hope of gaining was balanced against the risk of losing. There was an exchange of equivalents, irrevocable except for fraud, a settlement of a controversy presumably honest. The old causes of action were terminated. A new liability was substituted therefor. The nature of the new cause of action we need not define. Enough to say that it superseded the old.
“Defendants may be able in an independent suit to upset the settlement for reasons that would invalidate a contract, such as fraud or over-reaching. But when a compromise results in the termination of an action and the execution of a new agreement giving effect to the settlement, it cannot be undone in the discretion of the court, on motion in the action and on conflicting affidavits raising anew the same dispute once settled, merely to bring about a final disposition of the original action on its merits. (Emeris v. Woodward, 43 Ch. D. 185; Lilly v. Haynes Co-op. Coal Mining Co., 48 N. D. 937.)”
The Burns defendants contend that the settlement should be rescinded for a failure of consideration because the plaintiffs have allegedly failed to perform under the terms of the settlement. As a preliminary matter,
*764 “[s]ince a promise is a good consideration for a promise, mutual promises are generally held to be sufficient consideration for each other.
“Mutual promises on the part of both parties to a contract constitute sufficient consideration for the agreement, where each party undertakes some act or forbearance that will be, or apparently may be, detrimental to the promisor or beneficial to the promisee.” (22 NY Jur 2d, Contracts § 80.)
For example, “mutual promises in an agreement for the distribution of property in the event of a divorce or annulment provide valid consideration for the agreement.” (Id.)
In support of their argument for rescission, the Burns defendants cite Fugelsang v Fugelsang (131 AD2d 810 [2d Dept 1987]) for the proposition that a duly executed settlement agreement can be rescinded where there is a failure of consideration. However, in Fugelsang, a matrimonial action, the Court determined that there was a failure of consideration where it became impossible for the plaintiff husband to perform under the parties’ stipulation due to the passage of time and the emancipation of children. (Fugelsang, 131 AD2d at 812.) Williston explains that “when there is a failure of consideration, there is originally a contract when the agreement is made, but because of some supervening cause, the promised performance fails.” (3 Richard A. Lord, Williston on Contracts § 7:11, Lack of or failure of consideration and its effect [4th ed].)
Further, a general release of claims can operate even in the absence of consideration. In Matter of Cheng Ching Wang (114 AD3d 939, 940 [2d Dept 2014]), the Court found that the claimant fairly, knowingly, and voluntarily released her claims against the estate of her domestic partner, explaining that “a release of all claims is valid notwithstanding a lack of consideration (see General Obligations Law §§ 15-303, 5-1103; WDF, Inc. v City of New York, 104 AD3d 557 [2013])” (emphasis added; id. at 940-941 [noting that a general release “may (be) invalidated for the traditional bases for setting aside written agreements such as duress, fraud, or mutual mistake, with the burden on the party seeking to invalidate the release”]).
Even where a basis to rescind exists,
“[a] transaction cannot be rescinded on account of fraud, or on account of breach of warranty, without prompt election and restoration of the status quo by the party seeking rescission. In the normal *765 course, many a plaintiff might be able to rescind a contract by prompt action but, instead, chose continued performance, leaving damages as the best remedy.” (27 Richard A. Lord, Williston on Contracts § 70:41, Election and restoration of status quo [4th ed].)
The Burns defendants’ own cited case law is instructive as well: “If the party who seeks rescission has an adequate remedy at law, ordinarily he is not entitled to rescind . . . (Callanan v Keeseville, Ausable Chasm & Lake Champlain R.R. Co., 199 NY 268, 284 [1910].) There is no dispute here that there was at least partial performance under the terms of the settlement. Whether there was complete performance remains an issue of dispute between the parties. There is likewise no dispute that the Burns defendants have kept the items that were provided as part of the exchange and have made no offer to return to the status quo. If, as the Burns defendants assert, two of the items exchanged are the incorrect items, the aggrieved parties have a separate claim for damages resulting from the alleged breach of the stipulation agreement, but rescission is not applicable under the present circumstances.
Next, the Burns defendants contend that the exchange of property was a condition precedent to the settlement. A condition is defined as “an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.” (Restatement [Second] of Contracts § 224; see also IDT Corp. v Tyco Group, S.A.R.L., 13 NY3d 209, 214 [2009].) A contract term may be a promise or condition depending on whether it reflects an intent to act (a promise) or refers to an event not certain to occur but which must occur before performance is due (a condition). (PJI 4:1.1, Comment, citing Merritt Hill Vineyards v Windy Hgts. Vineyard, 61 NY2d 106 [1984].) “Where there is ambiguity, the law does not favor a construction which creates a condition precedent.” (Id., citing Kass v Kass, 235 AD2d 150 [2d Dept 1997]; Ashkenazi v Kent S. Assoc., LLC, 51 AD3d 611 [2d Dept 2008].) In this case, the settlement agreement does not use any language of condition such as “unless,” “until,” “if,” “on condition that,” “provided that,” or “subject to.” There is no appearance from the contract that the parties intended the exchange to act as a condition precedent to the agreement rather than a promise to perform required by the contract.
For the foregoing reasons, it is hereby ordered that plaintiffs’ motion for an order to enforce the stipulation of settlement is *766 granted; and it is further ordered that plaintiffs’ motion for an order directing counsel for Becker defendants to deliver the original general releases executed by all defendants on April 28, 2016 and the original stipulation of settlement is granted and counsel is so directed; and it is further ordered that the parties are directed to enter a stipulation of discontinuance; and it is further ordered that the parties’ motions for attorneys’ fees are denied.